# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

JAMES KVECH,

       Plaintiff,

vs.                                                                              No. CIV 12-0267 JB/KBM

STATE OF NEW MEXICO
DEPARTMENT OF PUBIC SAFETY,
REGINA CHACON, and JOHN DOES 1-10,

       Defendants.

## MEMORANDUM OPINION AND AMENDED ORDER[1]

**THIS MATTER** comes before the Court on the Motion for Summary Judgment (Qualified Immunity), filed September 28, 2012 (Doc. 22)("MSJ").  The Court held a hearing on May 20, 2013.  The primary issues are: (i) whether Defendant Regina Chacon violated Plaintiff James Kvech's rights protected under the Fourteenth Amendment to the Constitution of the United States of America by not removing his name from the New Mexico sex offender registry and sending a letter to Kvech telling him that he needed to continue registering as a sex offender; (ii) whether federal law protecting Kvech's liberty interest and establishing his procedural due-process rights was clearly established at the time of Chacon's actions in 2006 to 2010; and (iii) whether federal statutory immunity protects Chacon.  The Court concludes that Chacon's conduct infringed on Kvech's constitutionally protected liberty interest, because her conduct in not removing Kvech's name from the New Mexico sex offender registry amounted to a false,

---

[1] The Court entered an Order, filed September 30, 2013 (Doc. 39), granting the Motion for Summary Judgment (Qualified Immunity), filed September 28, 2012 (Doc. 22)("MSJ"), and stating: "The Court will . . . issue a memorandum opinion more fully detailing its rationale for this decision."  Order at 1 n.1.  This Memorandum and Amended Order contains the promised opinion, and it amends the Order to grant the MSJ in part and deny it in part.

derogatory, and stigmatizing statement that injured Kvech's reputation, and altered his legal status in New Mexico, and that she did not provide Chacon a hearing or opportunity to challenge her conclusion that his Colorado conviction was an equivalent offense under New Mexico law. The Court also concludes, however, that the law at the time was not clearly established; it was not clear that any hearing was necessary to determine that an out-of-state conviction was equivalent to a sex offense, when the person who had been convicted of a sex offense in another state was required to register as a sex offender in that other state. The Court will grant the motion for summary judgment, because Chacon is protected by qualified immunity. Although the qualified immunity issue disposes of the case, the Court notes that, under the statutory immunity analysis, the Court would deny the motion, because there is a disputed question whether Chacon acted in good faith.

## FACTUAL BACKGROUND

The affidavits and exhibits demonstrate that the following facts are undisputed. There are factual issues, but they are not material.

The State of New Mexico Department of Public Safety ("the DPS")[2] has employed Chacon since 2000. See Second Affidavit of Regina Chacon ¶ 1, at 1, executed September 26, 2012, filed September 28, 2012 (Doc. 22-1)("Second Chacon Aff."); MSJ ¶ 1, at 9 (setting forth this fact); Plaintiff's Response to Defendant's Motion for Summary Judgment at 2-3, filed November 26, 2012 (Doc. 29)("Response")(not disputing this fact).[3]  Since 2007, Chacon has

---

[2] The DPS is a named defendant, but the Court previously disposed of the claims against the DPS. See Stipulated Order Dismissing with Prejudice Parts of Complaint, filed May 8, 2012 (Doc. 12).

[3] Kvech did not respond to every fact. In the Response, Kvech said: "In order to keep our Response concise and to the point we are only going to respond to the material facts offered by

served as the Assistant Bureau Chief of the the DPS' Law Enforcement Records Bureau, which is responsible for maintaining the central registry under Section 29-11A-5(c) of the New Mexico Sex Offender Registration and Notification Act, N.M. Stat. Ann. §§ 29-11A-1 to 29-11A-10 ("the New Mexico SORNA").  Second Chacon Aff. ¶ 1, at 1; MSJ ¶ 1, at 9 (setting forth this fact); Response at 3 (not disputing this fact).  Chacon is not a law enforcement officer.  See First Affidavit of Regina Chacon ¶ 4, at 1, executed March 16, 2012, filed March 20, 2012 (Doc. 5-1)("First Chacon Aff."); MSJ ¶ 2 (setting forth this fact); Response at 3 (not disputing this fact).

On October 30, 2006, Kvech pled guilty to misdemeanor Unlawful Sexual Contact, Colo. Rev. Stat. § 18-3-404(1)(a), which says that a person is guilty of unlawful sexual contact if the "actor knows that the victim does not consent"; the statute does not include as an element force or age.  Response ¶ 1, at 4 (setting forth this fact).  See Reply ¶ 1, at 7 (not disputing this fact).  By Judgment of Conviction and Sentence entered on November 6, 2006, Kvech was convicted in the District Court of Arapahoe County, Colorado, of what the judgment described as "Sex

---

Defendant Chacon."  Response at 2.  Kvech then responded to only certain facts that Chacon set forth in the MSJ; because Kvech has not responded to nor disputed the other facts, the Court deems these facts as undisputed.  D.N.M.LR-Civ. 56.1(b) provides in relevant part:

> The Response must contain a concise statement of the material facts cited by the movant as to which the non-movant contends a genuine issue does exist.  Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the non-movant relies, and must state the number of the movant's fact that is disputed.  All material facts set forth in the Memorandum will be deemed undisputed unless specifically controverted.  The Response may set forth additional facts other than those which respond to the Memorandum which the non-movant contends are material to the resolution of the motion.  Each additional fact must be lettered and must refer with particularity to those portions of the record upon which the non-movant relies.

D.N.M.LR-Civ. 56.1(b).  For the facts that Kvech did not specifically dispute, the Court will cite the page of the Response where Kvech would have enumerated a response had he disputed that fact.

Assault 3." Second Chacon Aff. ¶ 5, at 2. <u>See</u> MSJ ¶ 3, at 9 (setting forth this fact); Response at 3 (not disputing this fact). The Colorado Judgment of Conviction and Sentence states that Kvech pled guilty to "Sex Assault 3 -- unspecified," a misdemeanor, contrary to Colo. Rev. Stat. 18-3-404; it does not state any findings of fact regarding the victim's age or if force was used. Judgment of Conviction and Sentence at 1, filed September 28, 2012 (Doc. 22-2 & 29-4)("Colo. Judgment"). <u>See</u> Response ¶ 3, at 5 (setting forth this fact); Reply ¶ 3, at 7 (not disputing this fact). Colo. Rev. Stat. § 18-3-404(2)(b) defines unlawful sexual contact as a class 4 felony "if the actor compels the victim to submit by use of such force, intimidation, or threat"; Kvech was not, however, convicted of the class 4 felony that would have required force as an element to the crime. <u>See</u> Colo. Judgment at 1; Response ¶ 4, at 5 (setting forth this fact); Reply ¶ 4 (not disputing this fact). The Colorado court sentenced Kvech to 198 days of time served and two years of probation. <u>See</u> Second Chacon Aff. ¶ 5, at 2; MSJ ¶ 3, at 9 (setting forth this fact); Response at 3 (not disputing this fact). As an express part of the Colo. Judgment, the Colorado District Court imposed conditions of release on Kvech, including that he must not have contact with "children under the age of 18 unless authorized by Probation"; that he must "register as a sex offender" in Colorado within five days after entry of judgment; that he was allowed to transfer his probation supervision to New Mexico from Colorado; and that, if he moved to New Mexico, he must, if required by local law, register as a sex offender in New Mexico. Second Chacon Aff. ¶ 6, at 2. <u>See</u> MSJ ¶ 4, at 9 (setting forth this fact); Response at 3 (not disputing this fact). Pursuant to Kvech's Colorado conviction, Colorado law required him to register as a sex offender once a year for ten years; he could then petition the court to release him from his registration requirement. <u>See</u> Facsimile Transmission from Karen l/n/u at the Arapahoe County Sheriff's Office to Teresa Hernandez, Sex Offender Coordinator in New Mexico at 1-2, sent

- 4 -

September 17, 2010, filed November 26, 2012 (Doc. 29-3); Response ¶ 2, at 5 (setting forth this fact); Reply ¶ 2, at 7 (not disputing this fact).

Kvech's written condition of probation, which Kvech and his Colorado probation officer signed, included requirements that Kvech must register as a sex offender; that he was not allowed to leave the State of Colorado without his probation officer's written permission; and that, if he received permission to move, he must re-register as a sex offender within five business days following his move.  See Second Chacon Aff. ¶ 7, at 2; Conditions of Probation, filed September 28, 2012 (Doc. 22-2 at 2)("Conditions"); MSJ ¶ 5, at 10 (setting forth these facts); Response ¶ 5, at 3 (not disputing these facts).[4]  Kvech was not subject to Colorado's Sex Offender Intensive Supervision Probation.  See Conditions at 3; Response ¶ 5, at 3 (setting forth this fact); Reply at 5-6 (not disputing this fact).  Pursuant to the Colorado court's order, Kvech registered as a sex offender with the State of Colorado Department of Public Safety, and the Colorado the DPS submitted the information to the national sex offender registry that the Federal Bureau of Investigation and the United States Department of Justice administers.  See Second Chacon Aff. ¶ 8, at 3-4; MSJ ¶ 6, at 10 (setting forth this fact);[5] Response at 3 (not disputing this fact).

---

[4] The MSJ additionally states that Kvech was under "Sex Offender Intensive Supervision Probation," MSJ ¶ 5, at 10, but Kvech disputes this fact, because he did not sign that portion of the Conditions, see Response ¶ 5, at 3; Conditions at 3.  Kvech did not dispute the other facts in this sentence.

[5] In the Second Chacon Aff., Chacon says: "On information and belief, Colorado the DPS likely would have submitted Plaintiff's registration information to the national sex offender registry that is administered by the F.B.I. and the United States Department of Justice."  Second Chacon Aff. ¶ 8, at 3.  Although Chacon indicates that she does not have personal knowledge of what actions Colorado the DPS took after Kvech registered as a sex offender, Kvech has not disputed that Colorado the DPS submitted the registration information, and the Court therefore finds this fact undisputed.

The Colorado Department of Probation gave Kvech permission to move to Rio Rancho, Sandoval County, New Mexico.  See Second Chacon Aff. ¶ 9, at 3; MSJ ¶ 7, at 10 (setting forth this fact);[6] Response at 3 (not disputing this fact).  On November 15, 2006, Kvech's probation officer in Colorado sent by facsimile transmission Kvech's sentencing information to Deputy Jessica Mascereñas of the Sandoval County Sheriff's Office, to inform her that Kvech was moving to Sandoval County, New Mexico, and was required to register as a sex offender in Colorado; was allowed to transfer his probation supervision to New Mexico; and that he was required to register as a sex offender in his community of residence in New Mexico if that community so required.  See Second Chacon Aff. ¶ 10, at 3; Facsimile Transmission from Patrick B. Duran, Probation of Colorado, to Jessica Masereñas, New Mexico Sheriff's Office, sent November 15, 2006, filed September 28, 2012 (Doc. 22-2 at 5)("Duran Fax"); MSJ ¶ 8, at 10-11 (setting forth these facts); Response ¶ 8, at 3 (not disputing these facts).  The documents that Kvech's probation officer sent to Mascereñas indicated that the charge of "Sex Assault-Overcome Victim's Will" was dismissed.  Duran Fax at 6.  See Response ¶ 8, at 3 (setting forth this fact); Reply at 5-6 (not disputing this fact).

Kvech registered with the Sandoval County Sheriff's Office as a sex offender on November 16, 2006, ten days after the entry of the Colo. Judgment.  See Second Chacon Aff. ¶ 14, at 5; Sandoval County Sheriff's Office Sex Offender Registration 90 Days Verification at 1, signed February 15, 2007, filed September 28, 2012 (Doc. 22-2 at 11)("Feb. 15, 2007 Verification");

---

[6] In the Second Chacon Aff., Chacon says: "Apparently, the Colorado Department of Probation gave permission for Plaintiff to move to Rio Rancho, New Mexico."  Second Chacon Aff. ¶ 9, at 3.  Although Chacon indicates that she does not have personal knowledge of whether the Colorado Department of Probation gave such permission, Kvech has not disputed this fact, and the Court therefore finds this fact undisputed.

MSJ ¶ 12, at 12 (setting forth this fact); Response at 4 (not disputing this fact).  Masereñas registered Kvech and processed the paperwork according to N.M. Stat. Ann. § 29-11A-4(B), including Kvech's legal name and any other names used, date of birth, social security number, current address, place of employment, a complete set of fingerprints, a DNA sample, Kvech's photograph, and identifying physical information.  See Second Chacon Aff. ¶ 14, at 5; MSJ ¶ 12, at 12-13 (setting forth these facts); Response at 4 (not disputing these facts).  Kvech signed and acknowledged that he was required to renew his registration with the Sheriff's Office by February 15, 2007, and again by May 16, 2007, August 16, 2007, and November 16, 2007.  See Feb. 15, 2007 Verification at 1; Second Chacon Aff. ¶ 14, at 5; MSJ ¶ 12, at 13 (setting forth this fact); Response at 4 (not disputing this fact).  The Sheriff's Office entered Kvech's name on the Sandoval County local registry of sex offenders, pursuant to N.M. Stat. Ann. § 29-11A-5(a), and forwarded his registration information to the DPS's Law Enforcement Records Bureau under N.M. Stat. Ann. § 29-11A-5(B)(1).  See Second Chacon Aff. ¶ 15, at 5; MSJ ¶ 13, at 13 (setting forth this fact);[7] Response at 4 (not disputing this fact).  Based on Kvech's registration information that the Sandoval County Sheriff's Office sent to the DPS, the DPS entered Kvech's name on the central registry of sex offenders, and sent his conviction information and fingerprints to the national sex offender registry that the FBI and the DOJ administer.  See Second Chacon Aff. ¶ 16, at 5-6; MSJ ¶ 14, at 13 (setting forth this fact); Response at 4 (not disputing this fact).  Kvech renewed his sex offender registration on February 15, 2007, and May 15, 2007.  See Second Chacon Aff. ¶ 17, at 6; MSJ ¶ 15, at 13 (setting forth this fact); Response

---

[7] Chacon said in the affidavit: "On information and belief, the Sheriff's Office entered Plaintiff's name on the Sandoval County local registry of sex offenders . . . ."  Second Chacon Aff. ¶ 15, at 5.  Although Chacon indicates that she does not have first-hand knowledge of this fact, Kvech has not disputed it; the Court therefore finds this fact undisputed.

at 4 (not disputing this fact).

After Kvech did not renew his registration on August 16, 2007, Mascereñas filed a Criminal Complaint and Affidavit for Arrest Warrant, and on September 5, 2007, a Magistrate Court in Sandoval County found probable cause and issued an arrest warrant against Kvech for failing to renew his registration. See Second Chacon Aff. ¶ 18, at 6; Warrant for Arrest at 13, filed September 28, 2012 (Doc. 22-2 at 12); MSJ ¶ 16, at 13-14 (setting forth this fact); Response at 4 (not disputing this fact). The Magistrate Court bound over Kvech, and a grand jury indicted him for failing to register with the Sheriff pursuant to N.M. Stat. Ann. § 29-11A-4(N); the criminal prosecution proceeded as State v. Kvech, Thirteenth Judicial District Court Cause No. D-1329-CR-07-618. See Second Chacon Aff. ¶ 19, at 6; Bind-Over Order, filed in Sandoval County Magistrate Court November 16, 2007, filed in federal court September 28, 2012 (Doc. 22-2 at 19); Grand Jury Indictment, filed in Sandoval County Clerk's Office November 15, 2007, filed in federal court September 28, 2012 (Doc. 22-2 at 20); MSJ ¶ 17, at 14 (setting forth this fact); Response at 4 (not disputing this fact). The District Court appointed counsel for Kvech and ordered him released from custody on his own recognizance; the District Attorney prosecuted the case. See Second Chacon Aff. ¶ 19, at 6; Order of Appointment, filed in Sandoval County Magistrate Court September 12, 2007, filed in federal court September 28, 2012 (Doc. 22-2 at 17); Order of Release, filed in Sandoval County Magistrate Court September 26, 2007, filed in federal court September 28, 2012 (Doc. 22-2 at 18); MSJ ¶ 17, at 14 (setting forth this fact); Response at 4 (not disputing this fact). Chacon and the DPS were not involved in Kvech's criminal prosecution for failing to register, but the Sandoval County Sheriff's Office provided to the DPS copies of the criminal complaint, arrest warrant affidavit and warrant, and subsequent notification that Kvech had been arrested and incarcerated on the charge. See Second Chacon

Aff. ¶ 20, at 6-7; MSJ ¶ 18, at 14 (setting forth this fact); Response at 4 (not disputing this fact). On November 7, 2007, the State of [New Mexico][8] extradited Kvech to Colorado; the Sandoval County Sheriff's Office notified the DPS of the extradition, and suspended Kvech's sex offender registration requirements in New Mexico.  See Second Chacon Aff. ¶ 21, at 7; MSJ ¶ 19, at 14 (setting forth this fact); Response at 4 (not disputing this fact).

On January 7, 2008, the Arapahoe County, Colorado Sheriff's Office notified the DPS that Kvech was released from the Colorado jail for time served and was relocating back to Sandoval County; the Arapaho County Sheriff's Office also sent by facsimile transmission a form that Kvech signed, stating that he understood and acknowledged his duty to register as a sex offender pursuant to Colorado law, and informing Kvech that he must register within five business days of being released with the local law enforcement agency where he lived.  See Second Chacon Aff. ¶ 22, at 7; Facsimile Transmission from Deputy f/n/u Donahue, Arapahoe County Sheriff's Office, Colorado, to Teresa Hernandez, Sex Offender Coordinator in New Mexico at 1-2, sent January 7, 2008, filed September 28, 2012 (Doc. 22-3, at 1); MSJ 20, at 14-15 (setting forth this fact); Response at 4 (not disputing this fact).  the DPS notified the Sandoval County Sheriff that Kvech was relocating back to Sandoval County, and also sent Kvech a letter informing him that, based on his status as a convicted sex offender in Colorado, he "may meet the requirement to register as a sex offender" in New Mexico, and advising him to register with the Sandoval County Sheriff's Office.  Second Chacon Aff. ¶ 23, at 7-8; Facsimile from Teresa

---

[8] Chacon stated that "the State of Colorado extradited Plaintiff to Colorado," MSJ ¶ 19, at 14, Second Chacon Aff. ¶ 21, at 7, but the meaning of "extradite" requires two jurisdictions: "1. To surrender or deliver (a fugitive) to another jurisdiction.  2. To obtain the surrender of (a fugitive) from another jurisdiction."  Black's Law Dictionary 520 (9th ed. 2010).  Neither party explained why Kvech was extradited to Colorado, but the Court suspects that the charge against Kvech for failing to register in New Mexico was a parole violation, and so New Mexico extradited him to Colorado for the Colorado courts to address the parole violation.

Hernadez to Sandoval Sex Offender Registry at 3-4, sent January 7, 2008, filed September 28, 2012 (Doc. 22-3 at 3).  See MSJ ¶ 21, at 15 (setting forth this fact); Response at 4 (not disputing this fact).  On January 15, 2008, Kvech re-registered with the Sandoval County Sheriff's Office as a sex offender, and signed and acknowledged that he was required to verify his registration every ninety days, i.e., by February 14, 2008, May 15, 2008, August 14, 2008, and November 15, 2008.  See Second Chacon Aff. ¶ 24, at 8; Sex Offender Registration 90 Days Verification at 5, signed January 15, 2008, filed September 28, 2012 (Doc. 22-3 at 5); MSJ ¶ 22, at 15 (setting forth this fact); Response at 4 (not disputing this fact).  The Sandoval County Sheriff's Office entered Kvech's name on the Sandoval County local registry of sex offenders and forwarded the registration information to the DPS's Law Enforcement Records Bureau.  See Second Chacon Aff. ¶ 25, at 8;[9] MSJ ¶ 23, at 16 (setting forth this fact); Response at 4 (not disputing this fact). Based solely on Kvech's registration information that the Sandoval County Sheriff's Office sent to the DPS, the DPS entered Kvech's name on the central registry of sex offenders, and sent his conviction information and fingerprints to the national sex offender registry.  See Second Chacon Aff. ¶ 26, at 8; MSJ ¶ 24, at 16 (setting forth this fact); Response at 4 (not disputing this fact). Kvech renewed his registration with the Sandoval County Sheriff's Office on February 12, 2008, May 15, 2008, August 14, 2008, and November 13, 2008; the Sheriff's Office notified the DPS of each renewal.  See Second Chacon Aff. ¶ 27, at 8-9; MSJ ¶ 25, at 16 (setting forth this fact); Response at 4 (not disputing this fact).  When Kvech made the annual renewal of his registration on November 13, 2008, the Sheriff's Office re-registered Kvech and processed the paperwork

_____

[9] Chacon stated in the affidavit: "On information and belief, the Sheriff's Office entered Plaintiff's name on the Sandoval County local registry of sex offenders . . . ."  Second Chacon Aff. ¶ 25, at 8.  Although Chacon indicates that she does not have first-hand knowledge of this fact, Kvech has not disputed it; the Court therefore finds this fact undisputed.

that N.M. Stat. Ann. § 29-11A-4(B), (E) required, and set up a schedule for Kvech to renew every ninety days, with the first renewal scheduled for February 12, 2009.  See Second Chacon Aff. ¶ 28, at 9; Sex Offender Registration 90 Days Verification at 6, signed November 13, 2008, filed September 28, 2012 (Doc. 22-3 at 6); MSJ ¶ 26, at 16 (setting forth this fact); Response at 4 (not disputing this fact).

In the criminal case against Kvech for failing to renew his registration, Kvech filed a motion to dismiss; the Honorable Louis P. McDonald, Division V, Judge of the Thirteenth Judicial District, State of New Mexico, held a hearing on the motion on October 23, 2008, which Chacon attended.  See Transcript of Proceedings at 2, 9, taken October 23, 2008, in the Thirteenth Judicial District Court, County of Sandoval, State of New Mexico, filed November 26, 2012 (Docs. 29-6 to 29-12)("New Mexico Transcript;[10] Response ¶ 5, at 5 (setting forth this fact); Reply ¶ 5, at 7 (not disputing this fact).  The hearing consisted of oral argument by counsel, and questions and comments from the bench, but Judge McDonald did not rule at the hearing. See New Mexico Transcript at 29-33, Reply ¶ 5, at 7 (setting forth this fact).[11]  Kvech's counsel asked Chacon at the hearing whether she admitted "that under New Mexico law, our statute does not require registration for misdemeanor contact"; Chacon replied: "Yes, sir."  New Mexico Transcript at 17:2-4 (Bargas, Chacon).  See Response ¶ 15, at 6-7 (setting forth this fact); Reply ¶ 15, at 9 (setting forth this fact).[12]  On November 20, 2008, Judge McDonald entered an Order

---

[10] Because Kvech attached the New Mexico Transcript in six different documents, the page numbers will refer to the numbers listed at the bottom right hand corner of the transcript pages, rather than to the numbers added to the documents through filing them in CM/ECF.

[11] Kvech did not file a supplemental response to address this fact, or dispute it at the hearing before the Court.  The Court thus finds it undisputed.

[12] Kvech's proposed undisputed fact states: "Defendant Chacon had actual knowledge

granting Kvech's motion to dismiss the charge of failing to register: Judge McDonald listed three

findings:

1)      That on October 30, 2006 in Arapahoe County, Colorado, the defendant
        plead [sic] guilty to Unlawful Sexual Contact contrary to Section 18-3-
        404(1)(a), D.R.S., a misdemeanor,

2)      That defendant's conviction for Unlawful Sexual Contact is not a "sex
        offense" or "equivalent" offense that requires him to register as a sex
        offender pursuant to the New Mexico Sex Offender Registration and
        Notification Act (SORNA), § 29-11A-1 et seq. NMSA 1978.

3)      That Defendant's Motion to Dismiss is well taking and shall be granted.

Order on Defendant's Motion to Dismiss at 7, filed in the Thirteenth Judicial District, County of

Sandoval, State of New Mexico on November 20, 2008, filed in federal court September 28,

2012 (Doc. 22-3 at 7)("Judge McDonald's Order").  See Second Chacon Aff. ¶ 29, at 9; MSJ

¶ 27, at 16-17 (setting forth these facts); Response ¶ 27, at 4 (not disputing these facts).[13]

Kvech's criminal defense attorney sent a copy of Judge McDonald's order to the DPS, which it

received around December 12, 2008.  See Second Chacon Aff. ¶ 30, at 9; MSJ ¶ 28, at 17 (setting

forth this fact); Response ¶ 28, at 4 (not disputing this fact).  Chacon had actual knowledge of

Judge McDonald's ruling.  See Letter from Roger Bargas, Attorney for James Kvech, to

_____

that in New Mexico, misdemeanor contact is not a registrable offense."  Response ¶ 15, at 6-7.
Chacon disputes the characterization of the testimony and quotes from the testimony: "Plaintiff
misstates the testimony, which testimony was that Ms. Chacon admitted that 'under New Mexico
law, our statute does not require registration for misdemeanor contact.'"  Reply ¶ 15, at 9.  Kvech
offers no further evidence to support his broader statement; accordingly, the Court will accept as
true only the testimony.  The Court thus quotes directly from the transcript, to avoid misstating
the testimony.

        [13] Kvech states that "the assertion that Judge McDonald's findings that Unlawful Sexual
Contact was not a 'sex offense' or 'equivalent' under SORNA in New Mexico is contrary to
Section 18-3-404(1)(a) C.R.S."  Response ¶ 27, at 4.  Chacon noted that the "Plaintiff disputes
Material Fact No. 27, which is a summary of Judge McDonald's order; the Court will determine
its accuracy based on the order itself."  Reply at 6.  Neither party disputes that Judge McDonald
made these findings; the Court thus finds this fact undisputed.

Department of Public Safety, Attn: Regina Chacon, sent December 3, 2008 (Doc. 22-3 at 9);
Response ¶ 7, at 5 (setting forth this fact); Reply ¶ 7, at 8 (not disputing this fact).  Chacon did
not remove Kvech from the sex offender registration until July 12, 2010.  See Letter from Regina
Chacon to James Kvech, sent July 12, 2010, filed September 28, 2012 (Doc. 22-3 at 25)("July
12, 2010 Letter"); Response ¶ 9, at 6 (setting forth this fact); Reply ¶ 8, at 8 (not disputing this
fact).  As a the DPS employee, Chacon had the authority to remove Kvech from the sex offender
registration and to relieve him of his registration requirements, see New Mexico Transcript at 10-
11; Response ¶ 13, at 6 (setting forth this fact); Reply ¶ 13, at 9 (not disputing this fact), if the
applicable statute and pertinent the DPS policies regarding the registration of convicted sex
offenders allowed, see Second Chacon Aff. ¶ 40, at 12-13; Reply ¶ 13, at 9 (setting forth this
fact).[14]

      Kvech renewed his registration as a sex offender with the Sandoval County Sheriff's
Office on February 12, 2009, and the Sheriff's Office notified the DPS of the renewal; Kvech
renewed his registration without the Sheriff's Office or anyone at the DPS taking affirmative
action telling him to do so.  See Second Chacon Aff. ¶ 31, at 9-10; MSJ ¶ 29, at 17 (setting forth
this fact);[15] Response at 4 (not disputing this fact).  This date was the last time Kvech registered

---

[14] Kvech did not file a supplemental response to address this fact or dispute it at the
hearing before the Court.  The Court thus finds it undisputed.

[15] Chacon states in her affidavit:

On February 12, 2009 Plaintiff apparently went to the Sandoval County Sheriff's
Office and renewed his registration as a sex offender with Deputy Gonzales, and
the Sheriff's Office notified the DPS of such renewal.  Based on my review of the
records, Plaintiff's registration on February 12, 2009 was undertaken by Plaintiff
without any affirmative action having been taken by the Sandoval County
Sheriff's Office or by anyone at the DPS including me.

as a sex offender in New Mexico.  See Second Chacon Aff. ¶ 32, at 10; MSJ ¶ 30, at 17 (setting

forth this fact); Response at 4 (not disputing this fact).  On February 13 or 14,[16] 2009, the Rio

Rancho Police Department arrested Kvech for disorderly conduct, and booked him into the

Sandoval County Detention Center in Bernalillo, New Mexico.  See Second Chacon Aff. ¶ 33, at

10; MSJ ¶ 31, at 17 (setting forth this fact); Response ¶ 31, at 4 (not properly controverting this

fact).[17]  He was released on February 17, 2009, and, according to the Affidavit for Arrest

Warrant, filed in Sandoval County March 6, 2009, filed in federal court November 26, 2012

(Doc. 22-3 at 11 & 29-2 at 2)("Affidavit for Arrest Warrant"), submitted by Rebecca Gonzales,

Deputy Sheriff and Detective at the Sandoval County Sheriff's Office, Kvech signed "a form

from the Sandoval County Detention Center that stated he was required to register with the

county Sheriff within ten (10) days of his release," pursuant to the New Mexico SORNA, and

---

Second Chacon Aff. ¶ 31, at 9-10.  Although Chacon's statement qualifies her knowledge, stating
that Kvech "apparently" went to the Sandoval County Sheriff's Office, Kvech does not dispute
this fact; the Court therefore finds it undisputed.

[16] The parties did not discuss this discrepancy, but provided evidence for two different
dates.  See Second Chacon Aff. ¶ 33, at 10 ("On February 14, 2009, Plaintiff was arrested by the
Rio Rancho Police Department for Disorderly Conduct . . . ."); New Mexico Sex Offender
Registration Update Form at 5, dated March 9, 2009, filed November 26, 2012 (Doc. 29-
1)("Update Form")("On February 13, 2009 James Lloyd Kvech was arrested by the Rio Rancho
Police Department for Disorderly Conduct.").

[17] Kvech states that he disputes this fact, because the "Plaintiff was also arrested and
charged for failing to register as a sex offender on February 14, 2009."  Response ¶ 31, at 4.
Kvech cites the New Mexico Sex Offender Registration Update Form, dated March 9, 2009, filed
November 26, 2012 (Doc. 29-1), but this document does not state that Kvech was arrested on
February 14, 2009, for failing to register as a sex offender.  Neither party attached documents
that reveal if, or when, Kvech was arrested for failing to register as a sex offender in 2009 or
after.   Because Kvech has not introduced competent evidence disputing Chacon's factual
assertion, the Court will accept Chacon's statement of this fact as uncontroverted.

that he was required to register by March 3, 2009.  Affidavit for Arrest Warrant at 2.[18]  Under

N.M. Stat. Ann. § 29-11A-7(B) and regulations promulgated by the DPS pursuant to the New

Mexico SORNA, a sex offender who is arrested on any criminal charge and then released from a

prison, detention center, or jail is required to re-register with the local county Sheriff within ten

days following his or her release from custody.  See Second Chacon Aff. ¶ 34, at 10; MSJ ¶ 32, at

18 (setting forth this fact); Response at 4 (not disputing this fact).  On March 5, 2009, Gonzales

contacted the DPS and spoke to Theresa Hernandez, "who stated she had spoken to her

supervisor Regina Chacon.  Mrs. Chacon advised that James Kvech is still required by the New

Mexico Department of Public Service to register as a sex offender and abide by all of the Sex

Offender Requirements Act and Guidelines."  Affidavit for Arrest Warrant at 3.

On March 6, 2009, Gonzales filed a Criminal Complaint and Affidavit for Arrest Warrant

in the Magistrate Court of Sandoval County, charging Kvech with failing to re-register under the

New Mexico SORNA within ten days after being released from custody.  See Second Chacon

Aff. ¶ 35, at 10; MSJ ¶ 33, at 18 (setting forth this fact); Response at 4 (not disputing this fact).

The Sheriff's Office sent to the DPS copies of the Criminal Complaint and Affidavit, and a copy

of a signed, but unfiled, Arrest Warrant, which the DPS received on March 16, 2009; the

Sheriff's Office made the decision to charge Kvech and did not send any other documents to the

DPS regarding the charge.  See Second Chacon Aff. ¶ 36, at 10; MSJ ¶ 34, at 18 (setting forth

---

[18] Neither party set forth facts explaining the gap in time between February 13 or 14, 2009, when Kvech was arrested for disorderly conduct, and March 6, 2009, when Gonzles filed a Criminal Complaint and Affidavit for Arrest Warrant, and why Gonzales apparently believed Kvech was required to re-register as a sex offender.  Both parties attached the Affidavit for Arrest Warrant, however, and so the Court finds as undisputed the facts from the Affidavit for Arrest Warrant.

this fact); Response ¶ 34, at 4 (not disputing this fact).[19]   Chacon does not have personal

knowledge of the outcome or subsequent proceedings, if any;[20] neither she nor anyone else at the

DPS made the decision to charge Kvech.   See Second Chacon Aff. ¶ 36, at 10; MSJ ¶ 34, at 18

(setting forth this fact); Response ¶ 34, at 4 (not disputing this fact).

    After Chacon received and reviewed Judge McDonald's Order, Chacon studied the facts,

circumstances, and elements of Kvech's Colorado crime conviction, compared them with the

essential elements of the statutory list of New Mexico offenses that are listed in the New Mexico

SORNA as "sex offenses," and determined whether it was an "equivalent" crime under the New

Mexico SORNA:

> I determined that what the Colorado judgment described as "Sex Assault 3" was,
> in fact, "Unlawful Sexual Contact" in violation of Section 18-3-404(1)(a), C.R.S.,
> and I reviewed the statute and the charge.   The charge to which Plaintiff pled
> guilty alleged that Plaintiff "unlawfully and knowingly subjected [victim] to
> sexual contact, and the defendant [Plaintiff] knew the victim did not consent[.]"
> See Exhibit A-14.   I obtained copies of the court file related to the Colorado
> criminal proceedings and all of the police reports from the criminal investigation
> conducted by the Glenwood Village, Colorado Police Department that led to
> Plaintiff's arrest and conviction of Unlawful Sexual Contact.   I determined that
> the evidence utilized to charge Plaintiff, and to which Plaintiff had pleaded guilty,
> established that Plaintiff had used force to penetrate the victim's vagina with his
> penis, against the victim's will; for example, the victim's statement to police
> included the facts that on the date and time charged, the victim was "afraid" and

---

[19] Kvech does not dispute this fact, but further states that "Defendant Chacon fails to note
that had she complied with Judge McDonald's order by removing his name from the sexual
offense registry and releasing him from the registration requirements, the Sandoval County
Sheriff's Department would never have filed a Criminal Complaint and Affidavit for Arrest
Warrant in the Magistrate Court, and the Magistrate Judge would never have signed the Arrest
Warrant."  Response ¶ 34, at 4.  Kvech did not reference any evidence to support this fact, which
the Court understands to be legal argument.

[20]Although Kvech attached a Warrant for Arrest, dated March 6, 2009, filed November
26, 2012 (Doc. 29-2), he did not set forth as an undisputed fact or provide evidence that he was
arrested for failing to re-register as a sex offender following his release from custody for
disorderly conduct.

had "tried to pull away from [Plaintiff]" but that Plaintiff had "pinned her down
on the bed with one hand holding both of her wrists above her head" as he
penetrated her.  I also determined that the victim was 17 years old at the time of
Plaintiff's sexual assault on her, and therefore was a minor under New Mexico
law.  See excerpts from Affidavit of Probable Cause for Arrest Warrant, Exhibit
A-15.

Second Chacon Aff. ¶ 37, at 11-12 (citing People's Added Count(s), filed in the District Court of

Arapahoe County, Colorado, on October 30, 2006, filed in federal court September 28, 2012

(Doc. 22-3 at 17), as Exhibit A-14; and Affidavit of Probable Cause for Arrest Warrant in

Arapahoe County, Colorado, filed September 28, 2012 (Doc. 22-3 at 21)("Affidavit of Probable

Cause for Arrest Warrant"), as Exhibit A-15).  See MSJ ¶ 35, at 18-19 (setting forth these facts);

Response ¶ 35, at 4 (not disputing these facts).[21]   Chacon did not review any potential defenses

Kvech may have had in Colorado.  See New Mexico Transcript at 18; Response ¶ 14, at 6

(setting forth this fact); Reply ¶ 14, at 9 (not disputing this fact).  Chacon concluded that Kvech's

Colorado conviction was the "equivalent" of the New Mexico sex offense of Criminal Sexual

Penetration in the third degree, defined as "all criminal sexual penetration perpetrated through

the use of force or coercion," N.M. Stat. Ann. § 30-9-11(F), a statutorily listed "sex offense"

under the New Mexico SORNA that requires the convict to register as a sex offender in New

Mexico.  Second Chacon Aff. ¶ 38, at 12.  See MSJ ¶ 36, at 20 (setting forth this fact); Response

---

[21] Kvech does not dispute this fact, but further states:

However, it seems that Defendant Chacon did not consider Judge McDonald's
Order, or the witness statements that show Plaintiff was a victim of false
allegations because she does not list them in this offered fact.   Moreover,
Defendant Chacon does not list that she took into consideration that Plaintiff pled
to a misdemeanor in which force or age are not elements of his conviction.  See
18-3-404(1)(a) C.R.S.

Response ¶ 35, at 4 (emphasis in original).  The Court views Kvech's comments on this
undisputed fact as legal argument.

at 4 (not disputing this fact).   Chacon did not give Kvech an opportunity to respond to the allegations which she reviewed in determining that he was required to register as a sex offender. See Second Chacon Aff. ¶ 37, at 11-12; Response ¶ 16, at 7 (setting forth this fact); Reply ¶ 16, at 9 (not disputing this fact).

On June 3, 2010, Chacon sent a letter to Kvech stating that, based on her review, Kvech was still required to register under the New Mexico SORNA; Kvech did not register with the local county sheriff.[22]   See Second Chacon Aff. ¶ 39, at 12; Letter from Regina Chacon to James Kvech, sent June 3, 2010, filed September 28, 2012 (Doc. 22-3 at 24); MSJ ¶ 37, at 20 (setting forth this fact); Response at 4 (not disputing this fact).   When Chacon conducted this review and sent the letter to Kvech, "it was her understanding" that she should determine whether Kvech's prior conviction was the "equivalent" of any of the defined New Mexico "sex offenses" under the New Mexico SORNA based on all the facts and circumstances of the case, including, for example, police reports; after she sent the letter to Kvech, the DPS changed its policy, and began limiting such a review to the out-of-state statutes themselves and the filed court papers, and did not include extrinsic documents such as police reports, witness statements, or transcripts of testimony.   Second Chacon Aff. ¶ 40, at 12-13.   See   MSJ ¶ 38, at 20-21 (setting forth this fact); Response at 4 (not disputing this fact).   Because of the new DPS policy, Chacon reviewed Kvech's file again, and, based on the Colo. Judgment and the related court filings, and on the elements of "Unlawful Sexual Contact" as defined in Colo. Rev. Stat. § 18-3-404(1)(a), Chacon concluded that there was no evidence of Kvech's sexual penetration through the use of force or coercion.   See Chacon Aff. ¶ 41, at 13; MSJ ¶ 39, at 21 (setting forth this fact); Response at 4

---

[22] The parties do not indicate where Kvech was residing at this time; if he was still residing in Sandoval County, he would have been required to renew his registration with the Sandoval County Sheriff's Office.

(not disputing this fact).  On July 12, 2010, Chacon sent Kvech a letter informing him that he was not required to register under the New Mexico SORNA.  See Second Chacon Aff. ¶ 41, at 13; July 12, 2010 Letter; MSJ ¶ 39, at 21 (setting forth this fact); Response at 4 (not disputing this fact).

## PROCEDURAL BACKGROUND

On January 24, 2012, Kvech filed his Complaint of Damages for Violation of Civil Rights, filed in the First Judicial District, County of Santa Fe, State of New Mexico, filed in federal court March 14, 2012 (Doc. 1-1)("Complaint") against Defendants the State of New Mexico Department of Public Safety, Regina Chacon, and John Does 1-10.  The Complaint alleges that the Defendants, acting under color of state law, deprived Kvech of life, liberty, and property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States of America.  Kvech brought his due process claim pursuant to 42 U.S.C. § 1983.  See Complaint ¶¶ 27-32, at 6-7.  The Court dismissed with prejudice the 42 U.S.C. § 1983 claim against the the DPS and all of the state-law tort claims against both Defendants.  See Stipulated Order Dismissing with Prejudice Parts of Complaint, filed May 8, 2012 (Doc. 12).  Chacon moves the Court, pursuant to rule 56 of the Federal Rules of Civil Procedure, to enter summary judgment in her favor as to the remaining claims set forth in the Complaint, based on qualified immunity and statutory immunity.  See MSJ at 1.

Under her qualified immunity argument, Chacon argues that the "stigma plus" requirement means a person must suffer more than having his or her reputation stigmatized, such as the loss of employment, licensure, or another tangible benefit.  MSJ at 21-22.  In the context sex offender registries, the Supreme Court of the United States has said that requiring sex offenders to register does not violate a cognizable liberty interest, because, at least under the

Connecticut registry requirements at issue in the case, the convicted offender already had a "procedurally safeguarded opportunity to contest" the conviction.   MSJ at 22-24 (citing Connecticut Dep't of Public Safety v. Doe, 538 U.S. 1 (2003)).  Chacon notes that, under the United States Court of Appeals for the Tenth Circuit law, there may be a procedural due process claim when a state official requires a person who has not been convicted of any sex offense to register on the sex offender registry, but that the law is not clearly established when a person has been convicted of a sex offense in another state.  See MSJ at 24-26 (citing Gwinn v. Awmiller, 354 F.3d 1211 (10th Cir. 2004); Brown v. Montoya, 662 F.3d 1152 (10th Cir. 2011)).

Chacon argues that the undisputed evidence shows that Kvech was convicted of a sex offense in Colorado, Unlawful Sexual Contact, in violation of Colo. Rev. Stat. § 18-3-404(1)(a), and was afforded all the procedural safeguards attendant to a conviction; that the Colorado district court required Kvech to register as a sex offender in Colorado, which Kvech did; that the Colorado authorities sent Kvech's sex offender information to the national sex offender registry; and that the Colorado court and probation authorities allowed Kvech to move to New Mexico on the condition that he register as a sex offender in New Mexico if New Mexico officials required registration.  See MSJ at 26.  Chacon contends that the "only issue" is whether Kvech's Colorado conviction constitutes an "equivalent" offense to one of the New Mexico statutory sex offenses under the New Mexico SORNA that would compel Kvech to register, and that this is a matter of statutory interpretation and methodology of which "reasonable minds may differ."  MSJ at 26-27.  Looking to the elements of the Colorado statute under which Kvech was convicted -- that the defendant unlawfully and knowingly subjected the victim to sexual contact knowing that the victim did not consent -- Chacon acknowledges that the "statutory definition, standing alone," would not constitute a sex offense under the New Mexico SORNA, but she contends that the

evidence from his conviction demonstrate that Kvech's Colorado conviction was an "equivalent" of the New Mexico sex offense of Criminal Sexual Penetration in the third degree, in violation of N.M. Stat. Ann. § 30-9-11(F) -- defined as "criminal sexual penetration perpetrated through the use of force or coercion."  MSJ at 27.  Chacon asserts that the New Mexico SORNA requires a person to register as a sex offender in New Mexico if that person has been convicted of a statutorily listed sex offense in New Mexico or an equivalent offense in any other jurisdiction, but that the New Mexico SORNA does not define the "key phrase 'their equivalents in any other jurisdiction,'" give any guidelines on how to determine whether a particular criminal conviction in another state is equivalent to a New Mexico offense, or specify whether to look at the statutory elements alone or to consider the facts and circumstances of the crime.  MSJ at 28.

While Chacon admits that Tenth Circuit law is clearly established "that a state official cannot require sex-offender registration where there is no conviction of a sex offense," she argues that the law is not clearly established

> that a state official cannot look behind the face of the statute -- to consider such documents as indictments, plea agreements, grand jury testimony, police reports, etc. -- to determine whether an out-of-state sex offense of which an offender has been convicted and ordered to register is 'equivalent' to one of the New Mexico sex offenses.

MSJ at 28.  She argues that the law was not clearly established that she had to make the determination whether Kvech's Colorado conviction was equivalent to a New Mexico sex offense under the New Mexico SORNA based solely on the statutory elements rather than on the underlying facts and circumstances; regardless, a § 1983 claim requires the violation of the United States Constitution or a federal law, and not simply the violation of a state statute.  See MSJ at 29.

Chacon also argues that she is protected through statutory immunity under 42 U.S.C.

§ 16929, part of the Adam Walsh Child Protection and Safety Act of 2006, 42 U.S.C. §§ 16901-16962.  See MSJ at 29-30.   Chacon contends that Congress requires states to maintain a jurisdiction-wide sex offender registry, specifies the sex offenses requiring registration, specifies the frequency of registration, requires the states to notify convicted sex offenders of the registration requirements, and mandates that the states submit registration information to the FBI and the DOJ Department of Justice, among other things.  See MSJ at 30.  Congress provided that "[t]he Federal Government, jurisdictions, political subdivisions of jurisdictions, and their agencies, officers, employees, and agents shall be immune from liability for good faith conduct under this subchapter."  MSJ at 30 (quoting 42 U.S.C. § 16929).  Chacon argues that she acted in good faith based on her understanding of the facts and applicable law, and therefore, that she is immune from liability based on statutory immunity.  See MSJ at 30-31.

Kvech responds that Chacon is not entitled to qualified or statutory immunity, because she disregarded Judge McDonald's order "that clearly stated Plaintiff was not required to register as a sex offender and his Colorado misdemeanor conviction is not an 'equivalent' offense" under the New Mexico SORNA, and because Chacon "usurped her power and added elements to Plaintiff's conviction and increased his registration requirements, a clear violation of Plaintiff's procedural due process rights."  Response at 1.  Regarding the qualified-immunity defense, Kvech argues that it is well established that being wrongly placed on a sex offender registry is a legitimate infringement on a person's constitutional right to liberty, invoking procedural due process protections and satisfying the stigma plus test, "because it couples governmental defamation with an alteration in legal status."  Response at 8 (citing Brown v. Montoya, 662 F.3d at 1171; Gwinn v. Awmiller, 354 F.3d at 1222-23)).  Kvech contends that being placed on the sex offender registry alters a person's legal status, because failing to register under the New Mexico

SORNA is a fourth degree felony and can lead to imprisonment; the registered sex offender must provide a photograph and a description of distinguishing features, give a DNA sample; and register every ninety days for life.  See Response at 9 n.1.  Kvech argues that the statutory elements of his Colorado conviction are the equivalent of battery in New Mexico, and that Chacon added the element of force to determine that the Colorado conviction is the equivalent of New Mexico's Criminal Sexual Contact in the fourth degree.  See Response at 9-10.

Kvech contends that he did not receive the appropriate level of process when Chacon classified him as a sex offender under the New Mexico SORNA, because Chacon relied on "allegations outside of the Colorado record, without affording Plaintiff an opportunity to respond to and defend himself against the allegations."  Response at 11.  In his view, Gwinn v. Awmiller and Brown v. Montoya set the floor for the process Chacon owed him, which include "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  Response at 10-11.  "Defendant Chacon relied upon allegations outside of the record without providing Plaintiff an opportunity to present evidence in his defense, an opportunity to respond to the allegations or an explanation of the decision, and thus violated Plaintiff's procedural due process protections."  Response at 11.  Kvech argues that, under these same authorities, his procedural due-process constitutional right was clearly established at the time Chacon classified him as a sex offender under the New Mexico SORNA.  See Response at 12. He asserts that it is not necessary to find a decision declaring the specific action unlawful, so long as the contours of the right were sufficiently clear so that a reasonable official would understand that his or her actions violated the right.  See Response at 12.  Kvech argues that his situation is closely related to Gwinn v. Awmiller, where the Tenth Circuit held that placing a

person who had not been convicted of a sex offense on the sex offender registry was "sufficient damage to his reputation" and "significantly altered his status as a matter of law to implicate his liberty interest."   Response at 13.   The plaintiff in that case had not been convicted for a sex offense -- he had been charged with sexual assault and robbery, but the charge for sexual assault was dropped after he pled guilty to robbery -- but the "factfinder relied upon a written report containing allegations outside of the record in order to require Mr. Gwinn to register as a sex offender outside the prison walls."   Response at 13.   Kvech argues that Chacon likewise improperly viewed facts outside his record of conviction, making his case analogous to Gwinn v. Awmiller.  See Response at 13-14.  Similarly, he points to Brown v. Montoya, where the Tenth Circuit held that the plaintiff's constitutional right was clearly established: the probation officer required the plaintiff to register as a sex offender, even though the plaintiff pled guilty to two counts of false imprisonment, which is not a sex offense under the New Mexico SORNA, because the probation officer used his own understanding of the New Mexico SORNA and acquired information outside the record of conviction to determine that the plaintiff should register.  See Response at 15.  The probation officer removed the plaintiff from the sex offender registry after a criminal court issued a written ruling that the plaintiff should be removed from the registry.  See Response at 15.  Kvech argues that Chacon also relied on allegations outside the record and used her own interpretation of the New Mexico SORNA to require him to register as a sex offender, but that, unlike the officer in Brown v. Montoya, did not remove Kvech from the sex offender registry when the criminal court's written ruling stated that Kvech's Colorado conviction was not equivalent to a sex offense under the New Mexico SORNA.  See Response at 15-16.  Kvech distinguishes his case from Connecticut Department of Public Safety v. Doe, where the plaintiffs were "convicted sex offenders and unquestionably subject to Connecticut's

sex offender law and registration requirements"; Kvech argues that he was not clearly subject to the New Mexico SORNA's registration requirements, because Chacon had to determine if Kvech's Colorado conviction was an equivalent to a sex offense under the New Mexico SORNA.  Response at 14.  Kvech contends that Chacon acted at least recklessly, if not intentionally or maliciously, when she forced him to register as a sex offender.  See Response at 17.

Kvech argues that Chacon is not entitled to statutory immunity, because she acted in bad faith by considering "allegations not in the record" when determining that Kvech's Colorado conviction was the equivalent of a New Mexico sex offense, requiring him to register as a sex offender.  Response at 17.  Kvech points specifically to that Chacon did not remove Kvech from the registry and told him that he needed to continue to register, even after she received Judge McDonald's ruling that Kvech was not required to register as a sex offender in New Mexico. See Response at 17-18.

Chacon's Reply emphasizes that Kvech was convicted in Colorado for Unlawful Sexual Contact, that the offense "unquestionably constitutes a 'sex offense' under Colorado law, requiring registration as a sex offender in Colorado," and that Kvech registered as a sex offender in Colorado before moving to New Mexico.  Reply at 1 & n.1.  Chacon argues that the issue is not whether the Colorado offense is an equivalent of a sex offense in New Mexico -- the issue upon which Judge McDonald ruled -- but the issue is whether the law was clearly established at the time that a state official would violate an individual's constitutional due process rights by determining without a subsequent hearing that the individual's sex offense conviction in one state also constituted a sex offense under the law of a different state.  See Reply at 1-2.

The issue here is not whether Ms. Chacon was correct or incorrect as a matter of

substantive New Mexico law, or whether Judge McDonald was correct; or whether Ms. Chacon needed to base her determination solely upon the statutory elements of the offense (as opposed to using police reports, witness statements, etc.); or whether it might have been better, wiser or more fair for the New Mexico legislature in SORNA to create a process, with notice and the right to be heard, for resolving such questions of statutory interpretation.   Rather, the issue is whether the law was clearly established regarding the constitutional due process rights allegedly violated.

Reply at 2.  Chacon argues that the law was not clearly established, because at the time she was making the determination, there was one Tenth Circuit opinion on the issue -- Gwinn v. Awmiller -- and that case involved a prisoner who had never been convicted, in any forum, of any sex offense.  See Reply at 3.  Chacon asserts that Brown v. Montoya is irrelevant to the "clearly established" analysis, because the Tenth Circuit issued the opinion on November 8, 2011 -- after Chacon's acts in 2006-10.  Reply at 3 n.3.

After Chacon notified the Court that briefing on the MSJ was completed, she submitted the Notice of Supplemental Authority, filed January 16, 2013 (Doc. 33)("Supp."), attaching State v. Hall, 2013-NMSC-001, 294 F.3d 1235, a Supreme Court of New Mexico opinion issued on December 5, 2012, that discussed the proper method to determine if an out-of-state offense qualifies as an equivalent sex offense under the New Mexico SORNA.  See Supp. at 1-2. Chacon noted that the Supreme Court of New Mexico's position aligns with Chacon's approach, not Judge McDonald's, thus demonstrating that, during the relevant time period, the law was not clearly established on this issue.  See Supp. at 1-2.

The Court held a hearing on May 20, 2013.  Chacon stated that Congress set out the basic framework for state sex offender registries, requiring states to create a registry, to obtain certain information from convicted sex offenders including identifying marks and a DNA sample, and to publish the registry on the Internet; included in the federal statute is that the officers, employers,

and agents shall be immune from liability for good faith conduct under the act.  See Tr. at 3:23-45:3 (Dickman).  Chacon asserted that she is protected under statutory immunity, but that the Court may not need to address that point, because her qualified immunity argument would make the issue moot.  See Tr. at 5:5-10 (Dickman).  Although the federal statute sets out the basic framework, Chacon said that each state's laws differ in terms of what offenses are characterized as registrable sex offenses.  See Tr. at 5:11-25 (Dickman).  Chacon explained that, in New Mexico, the sex offender must register with the local county Sheriff, who is then responsible for obtaining information from the sex offender, maintaining a registry for that county, and sending the information to the DPS in Santa Fe, which publishes the statewide sex offender registry on the Internet.  See Tr. at 6:9-21 (Dickman).  Each state determines how often sex offenders must update their registration information -- some states require every ninety days, like New Mexico, while others require updates once a year, after ten years, or otherwise.  See Tr. at 6:25-7:6 (Dickman).  In New Mexico, Chacon explained, it is a fourth degree felony for a sex offender to fail to register.  See Tr. at 6:22-25 (Dickman).

Reviewing the facts of the case, Chacon emphasized that Kvech was convicted for a sex offense in Colorado, which meant he was required to register as a sex offender in Colorado, see Tr. at 8:24-9:10 (Dickman), and that, after Kvech stopped registering, the Sheriff filed a criminal complaint against Kvech: "[I]t's undisputed that Ms Chacon was not involved" in filing the criminal complaint, obtaining the arrest warrant, arresting Kvech, or procuring the grand jury indictment, Tr. at 10:7-15.  Chacon noted that she and the DPS were not parties to the criminal case against Kvech for failing to register, and, thus, that court did not have personal jurisdiction over them; she argued that, in other situations when a person thinks that his or her out-of-state conviction is not equivalent to an offense under the New Mexico SORNA, the person can file a

declaratory action naming the DPS and the Sheriff, giving the court personal jurisdiction over those parties.  See Tr. at 11:3-11 (Dickman).  Chacon also noted that, although Judge McDonald dismissed the criminal complaint against Kvech, a subsequent case from the Supreme Court of New Mexico reveals that Judge McDonald's approach -- comparing only the elements of the Colorado crime with the statutory elements of New Mexico sex offenses -- is incorrect, and that the correct approach looks beyond the elements to consider whether a defendant's actual conduct, had it occurred in New Mexico, would have constituted a registrable offense under the New Mexico SORNA.  See Tr. at 11:19-12:6 (Dickman)(citing State v. Hall).  The Court asked whether Chacon said that Judge McDonald "got it wrong" because he came to the wrong conclusion about Kvech's offense, or because he did not use the correct analysis, Tr. at 13:7-10 (Court); Chacon said Judge McDonald did not apply the correct analysis and that, if Kvech's motion to dismiss came before a New Mexico court today, "there would probably be a different result," Tr. at 13:11-14:3 (Dickman).  Chacon argued that, especially in light of the Supreme Court of New Mexico's recent decision in State v. Hall, the law was not clearly established.  See Tr. at 14:4-14 (Dickman).  The Court asked Chacon to articulate Kvech's theory against her, see Tr. at 14:18-21 (Court); Chacon said that, to her understanding, the claim is that putting Kvech on a sex offender registry without a hearing violated his procedural due-process rights under a stigma-plus analysis, see Tr. at 14:22-15:3 (Dickman).  The Court noted that people convicted of sex offenses do not normally receive hearings before they must register, see Tr. at 15:4-5 (Court); Chacon agreed, based on the Supreme Court of the United States' holding in Connecticut Department of Public Safety v. Doe, and she further said that the offender is normally advised in open court of the requirement to register, see Tr. 15:19-14, 17:1-6 (Dickman).  The Court asked what the remedy would be for a person who was wrongfully told to

register and proposed an "extreme" example: "Let's say I have a traffic violation and the Sheriff of Sandoval County decides that I need to register as a sex offender and says we're going to charge you with a crime, failing to register if you don't." Tr. at 17:15-19 (Court). Chacon said, in that situation, the person could move to dismiss the criminal charges for failing to register, or could file a declaratory judgment action. See Tr. at 17:20-18:2 (Dickman). Chacon argued that the person in the hypothetical would not have a remedy under the civil rights statute, although she was not sure if there would be a federal remedy under the Constitution or some other federal statute, but contended that the analysis in the hypothetical is different than that needed for this case, because Kvech was convicted of a sex offense. See Tr. at 19:1-2, 22-25 (Dickman). The Court asked whether this case required it to decide if Kvech's Colorado offense is an equivalent offense to New Mexico's sex offenses under the New Mexico SORNA, see Tr. at 20:3-5 (Court); Chacon said no, because there is no clearly established law requiring a New Mexico officer to give a person convicted of a sex offense in another state a hearing before requiring the person to register as a sex offender, see Tr. at 20:12-22 (Dickman). Chacon argued that the clearly established law at the time she was making the decisions was from Connecticut Department of Public Safety v. Doe and Gwinn v. Awmiller; she says Gwinn v. Awmiller stands for the proposition that, if the person was not convicted of a sex offense, then he or she must be given procedural due process through notice and a hearing, but if the person was convicted of a sex offense, he or she has been given all the process that is due. See Tr. at 23:16-24 (Dickman). Chacon said that the New Mexico SORNA does not require any procedural process and that it leaves the decision to the Sheriff's discretion. See Tr. at 24:19-21 (Dickman).

The Court noted that most of the facts were not in dispute and asked Kvech whether there were any issues of material fact that would preclude summary judgment. See Tr. at 26:3-12

(Court).  Kvech responded that a triable fact included whether Chacon's actions, especially in disregarding Judge McDonald's opinion, were made in bad faith.  See Tr. at 26:16-21 (Dominguez).  When the Court asked about the role of Judge McDonald's opinion, Kvech said that, because Chacon disregarded the opinion, Kvech had to disclose his status as a sex offender to his employer for an additional year and a half.  See Tr. at 26:22-27:8 (Court, Dominguez). The Court asked whether being convicted for failing to register and being required to register were two separate issues, and whether anything would prevent the local Sheriff from re-charging Kvech after learning about the recent Supreme Court of New Mexico case and forcing a court to engage in a new analysis.  See Tr. at 27:9-12, 28:7-11 (Court).  Kvech said that the DPS and Chacon had the authority to remove Kvech's name from the registry, and without his name on the registry, the local Sheriff could not charge him for failing to register; regarding the Court's question about whether the Sheriff could ask a court to re-analyze Kvech's prior crime, Kvech said a good argument could be made for double jeopardy, because the previous case was dismissed with prejudice.  See Tr. at 27:24-28:22 (Dominguez, Court).  The Court asked whether Judge McDonald's opinion was limited to state law issues, or if it involved federal issues, see Tr. at 28:23-29:6 (Court), and Kvech said it was purely a matter of state law, see Tr. at 29:7-9 (Dominguez).  The Court noted that Chacon was acting purely under state law, and asked Kvech to define the federal issue before the Court, see Tr. at 29:17-22 (Court); Kvech said his claim is that, after Judge McDonald's order, it was clear under state law that he was not required to register, yet he was further prosecuted for failing to register, which implicated his "constitutional rights and privileges to due process."  Tr. at 30:7-16 (Dominguez).  Kvech argued that his case is distinct from Connecticut Department of Public Safety v. Doe, and when the Court asked whether he could point to a case that showed that the law was clearly established; Kvech said

that Gwinn v. Awmiller included similar facts and established that a government official should not look outside the court record to require someone to register as a sex offender.  See Tr. at 30:23-32:15 (Dominguez, Court).  When the Court asked whether Kvech had to register as a sex offender in Colorado, Kvech argued that his conviction required him to register in Colorado for ten years, and that the conviction was a misdemeanor; when he moved to New Mexico, Chacon looked to alleged conduct from a police report and added to the conviction elements of coercion or force, making it a felony.  See Tr. at 32:16-34:9 (Court, Dominguez).  The Court asked whether, had the DPS and Chacon given Kvech a hearing, disagreed with Judge McDonald's opinion, and ordered Kvech to continue registering as a sex offender, that process would have satisfied the due-process requirements, see Tr. at 35:25-26:2 (Court); Kvech said that would not have satisfied due process, because Judge McDonald's ruling bound the DPS, and they did not give Kvech a hearing or opportunity to present witnesses, see Tr. at 36:7-11 (Dominguez).  The Court asked whether Kvech's claim was truly a procedural due process claim, because he said that, even with a hearing, he would have pursued a claim had the DPS and Chacon come to the opposite conclusion of Judge McDonald's opinion, see Tr. at 37:7-12 (Court); Kvech said that his claim would have existed based on the "willful conduct," "complete disregard of a judicial opinion," and "the slippery slope of governmental power."  Tr. at 37:13-24 (Dominguez).  The Court asked why the federal constitution and a federal court should care about the state agency and state court's actions, see Tr. at 37:25-38:4 (Court); Kvech said Chacon's actions -- disregarding Judge McDonald's opinion, using extrinsic evidence, not providing Kvech an opportunity for a hearing and to bring witnesses on his behalf, and not providing a written ruling on why she believed he was required to register -- violated his procedural due-process rights. See Tr. at 41:9-18 (Dominguez).

In response to the Court's question why Chacon sent the second letter to Kvech, stating that Kvech was no longer required to register, Chacon said that she re-evaluated Kvech's file after the the DPS policy changed to require looking only at the elements of the statute and sent the second letter to comply with the new the DPS policy.  See Tr. at 43:4-20 (Court, Dickman).  Chacon argued that, to make a procedural due-process claim, a plaintiff cannot simply come into court under § 1983 and say his due-process rights were violated: Kvech's burden is to identify a clearly established federal body of law, from Supreme Court of the United States, the Tenth Circuit, or the weight of all the other circuits, that shows that some sort of process is due before a person who was convicted for an out-of-state sex offense is required to register in New Mexico.  See Tr. at 43:21-44:7 (Dickman).  Chacon argued that the relevant cases -- Gwinn v. Awmiller, Brown v. Montoya, and Connecticut Department of Public Safety v. Doe -- "all involve some official deciding that someone had committed a sex offense, a registrable sex offense where that person had never been convicted of a sex offense," and that, in this case, there was no doubt that Kvech was convicted of a sex offense in Colorado.  Tr. at 44:8-45:14 (Dickman).  Chacon asserted that Kvech's argument that she acted willfully and in bad faith is not relevant to the § 1983 claim, but is relevant to the statutory immunity claim, which the Court does not need to reach, because Kvech failed to meet his burden to point to a clearly established law creating a federal right to some kind of process.  See Tr. at 46:6-20 (Dickman).  Chacon emphasized that, even though she sent a letter to Kvech to register as a sex offender, Kvech did not register again after February 12, 2009, which introduces a causation issue into the analysis.  See Tr. at 46:21-47:3 (Dickman).

**LAW REGARDING SUMMARY JUDGMENT**

Rule 56(a) of the Federal Rules of Civil Procedure states: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the initial burden of 'show[ing] that there is an absence of evidence to support the nonmoving party's case.'" Herrera v. Santa Fe Pub. Schs., No. CIV 11-0422 JB/KBM, 2013 WL 3462484, at *23 (D.N.M. June 28, 2013)(Browning, J.)(quoting Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887, 891 (10th Cir. 1991)). See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence -- using any of the materials specified in Rule 56(c) -- that would entitle it to a directed verdict if not controverted at trial." Celotex Corp v. Catrett, 477 U.S. at 331 (Brennan, J., dissenting)(emphasis in original).[23] Once the movant meets this burden, rule 56 requires the nonmoving party to designate specific facts showing that there is a genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. at 324; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

The party opposing a motion for summary judgment must "set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc., 912 F.2d 1238, 1241 (10th Cir. 1990). See Vitkus v. Beatrice Co., 11 F.3d 1535, 1539 (10th Cir.

---

[23] Although the Hon. William J. Brennan, Jr., Associate Justice of the Supreme Court of the United States, dissented in Celotex Corp. v. Catrett, this sentence is widely understood to be an accurate statement of the law. See 10A C. Wright & A. Miller, Federal Practice & Procedure § 2727, at 470 (3d ed. 1998)("Although the Court issued a five-to-four decision, the majority and dissent both agreed as to how the summary-judgment burden of proof operates; they disagreed as to how the standard was applied to the facts of the case.").

1993)("However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." (internal quotation marks omitted)).  Rule 56(c)(1) provides: "A party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."  Fed. R. Civ. P. 56(c)(1).  It is not enough for the party opposing a properly supported motion for summary judgment to "rest on mere allegations or denials of his [or her] pleadings."  Anderson v. Liberty Lobby, Inc., 477 U.S. at 256.  See Abercrombie v. City of Catoosa, 896 F.2d 1228, 1231 (10th Cir. 1990); Otteson v. United States, 622 F.2d 516, 519 (10th Cir. 1980)("However, 'once a properly supported summary judgment motion is made, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing the existence of a genuine factual issue to be tried.'" (citation omitted)).  Nor can a party "avoid summary judgment by repeating conclusory opinions, allegations unsupported by specific facts, or speculation."  Colony Nat'l Ins. Co. v. Omer, No. 07-2123, 2008 WL 2309005, at *1 (D. Kan. June 2, 2008)(citing Argo v. Blue Cross & Blue Shield of Kan., Inc., 452 F.3d 1193, 1199 (10th Cir. 2006); Fed. R. Civ. P. 56(e)).  "In responding to a motion for summary judgment, 'a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial.'"  Colony Nat'l Ins. Co. v. Omer, 2008 WL 2309005, at *1 (quoting Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988)).

To deny a motion for summary judgment, genuine factual issues must exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either

party." Anderson v. Liberty Lobby, Inc., 477 U.S. at 250. A mere "scintilla" of evidence will not avoid summary judgment. Vitkus v. Beatrice Co., 11 F.3d at 1539 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. at 248). Rather, there must be sufficient evidence on which the factfinder could reasonably find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 251 (quoting Schuylkill & Dauphin Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)); Vitkus v. Beatrice Co., 11 F.3d at 1539. "[T]here is no evidence for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. at 249 (citations omitted). Where a rational trier of fact, considering the record as a whole, could not find for the nonmoving party, there is no genuine issue for trial. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When reviewing a motion for summary judgment, the court should keep in mind certain principles. First, the court's role is not to weigh the evidence, but to assess the threshold issue whether a genuine issue exists as to material facts requiring a trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 249. Second, the ultimate standard of proof is relevant for purposes of ruling on a summary judgment, such that, when ruling on a summary judgment motion, the court must "bear in mind the actual quantum and quality of proof necessary to support liability." Anderson v. Liberty Lobby, Inc., 477 U.S. at 254. Third, the court must resolve all reasonable inferences and doubts in favor of the nonmoving party, and construe all evidence in the light most favorable to the nonmoving party. See Hunt v. Cromartie, 526 U.S. 541, 550-55 (1999); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255 ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Fourth, the court cannot

decide any issues of credibility.  See Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

**RELEVANT LAW REGARDING 42 U.S.C. § 1983**

Section 1983 of Title 42 of the United States Code provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, . . . .

42 U.S.C. § 1983.   Section 1983 creates only the right of action; it does not create any substantive rights; substantive rights must come from the Constitution or federal statute.  See Spielman v. Hildebrand, 873 F.2d 1377, 1386 (10th Cir. 1989)("Section 1983 does not provide a remedy if federal law does not create enforceable rights.").  Rather, 42 U.S.C. § 1983 authorizes an injured person to assert a claim for relief against a person who, acting under color of state law, violated the claimant's federally protected rights.   To state a claim upon which relief can be granted under § 1983, a plaintiff must allege: (i) a deprivation of a federal right; and (ii) that the person who deprived the plaintiff of that right acted under color of state law.  See West v. Aikins, 487 U.S. 42, 48 (1988).  Broken down differently, a plaintiff

must establish (1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a "person" (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia.

Martinez v. Martinez, No. CIV 09-0281 JB/KBM, 2010 WL 1608884, at *11 (D.N.M. Mar. 30, 2010)(Browning, J.)(quoting Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)).  Neither the civil-rights statutes nor the Fourteenth Amendment, however, are a license to the federal judiciary to displace state law through the creation of a body of general federal tort law.  See Paul v. Davis, 424 U.S. 693, 701 (1976)(Fourteenth Amendment); Griffin v. Breckenridge,

403 U.S. 88, 101-102 (1971)(civil-rights statute).

The Supreme Court of the United States has made clear that there is no respondeat superior liability under § 1983.  See Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009)("Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); Bd. of Cnty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997).  An entity cannot be held liable solely on the basis of the existence of an employer-employee relationship with an alleged tortfeasor.  See Monell v. New York City Dept. of Soc. Servs., 436 U.S. 658, 689 (1978).  It can be held liable only for its own unconstitutional or illegal policies, and not for the tortious acts of their employees.

Liability requires a showing that such policies were a "deliberate or conscious choice." Barney v. Pulsipher, 143 F.3d 1299, 1307-08 (10th Cir. 1998)(citations and internal quotations omitted).  See Bd. of Cnty. Comm'rs v. Brown, 520 U.S. at 404 ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the injury alleged." (emphasis in original)).  These standards apply for allegations of liability based on failure to train and for "official de facto policies" that arise from "failing to adopt various policies to adequately protect" a class of persons.  Barney v. Pulsipher, 143 F.3d at 1367, 1309 n.8.  "[W]hen the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm," it is liable.  Barney v. Pulsipher, 143 F.3d at 1307.

In a "narrow range of circumstances," however, deliberate indifference may be

found absent a pattern of unconstitutional behavior if a violation of federal rights is a "highly predictable" or "plainly obvious" consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

Barney v. Pulsipher, 143 F.3d at 1307-08.  Most cases, however, will not fall within this "narrow range of circumstances" without "a pattern of violations."  Barney v. Pulsipher, 143 F.3d at 1308.

## LAW REGARDING QUALIFIED IMMUNITY

Qualified immunity recognizes the "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority."  Harlow v. Fitzgerald, 457 U.S. 800, 807 (1982).  "Qualified immunity protects federal and state officials from liability for discretionary functions, and from 'the unwarranted demands customarily imposed upon those defending a long drawn-out lawsuit.'"  Roybal v. City of Albuquerque, No. CIV 08-0181, 2009 WL 1329834, at *10 (D.N.M. Apr. 28, 2009)(Browning, J.)(quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  The Supreme Court deems it "untenable to draw a distinction for purposes of immunity law between suits brought against state officials under § 1983 and suits brought directly under the Constitution against federal officials."  Butz v. Economu, 438 U.S. 478, 504 (1978).  "The qualified immunity analysis is the same whether the claims are brought under Bivens or pursuant to the post-Civil War Civil Rights Acts."  Breidenbach v. Bolish, 126 F.3d 1288, 1291 (10th Cir. 1997), overruled on other grounds as recognized in Currier v. Doran, 242 F.3d 905 (10th Cir. 2001).

Under § 1983 (invoked in this case) and Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388 . . . (1971), a plaintiff may seek money damages from government officials who have violated her constitutional or statutory rights.  But to ensure that fear of liability will not "unduly inhibit officials in the discharge of their duties," Anderson v. Creighton, 483 U.S. 635, 638 . . . (1987), the officials may claim qualified immunity; so long as they have not violated a "clearly established" right, they are shielded from personal liability, Harlow v. Fitzgerald,

457 U.S. 800, 818 . . . (1982).  That means a court can often avoid ruling on the plaintiff's claim that a particular right exists.  If prior case law has not clearly settled the right, and so given officials fair notice of it, the court can simply dismiss the claim for money damages.  The court need never decide whether the plaintiff's claim, even though novel or otherwise unsettled, in fact has merit.

Camreta v. Green, 131 S. Ct. 2020, 2030-31 (2011).

Issues of qualified immunity are best resolved at the "earliest possible stage in litigation." Pearson v. Callahan, 555 U.S. at 232 (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)(per curiam)).  "If qualified immunity is to mean anything, it must mean that public employees who are just doing their jobs are generally immune from suit."  Lewis v. Tripp, 604 F.3d 1221, 1230 (10th Cir. 2010).

Qualified immunity shields government officials from liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. at 231 (quoting Harlow v. Fitzgerald, 457 U.S. at 818).  Qualified immunity also shields officers who have "reasonable, but mistaken beliefs," and operates to protect officers from the sometimes "hazy border[s]" of the law. Saucier v. Katz, 533 U.S. 194, 205 (2001).  When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct.  See Riggins v. Goodman, 572 F.3d at 1107.

### 1.  Procedural Approach to Qualified Immunity.

The Supreme Court recently revisited the proper procedure for lower courts to evaluate a qualified immunity defense.  In Pearson v. Callahan, the Supreme Court held that lower courts "should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances of the

particular case at hand." 555 U.S. at 236.  The Supreme Court also noted that, while no longer mandatory, the protocol outlined in Saucier v. Katz -- by which a court first decides if the defendant's actions violated the constitution, and then the court determines if the right violated was clearly established -- will often be beneficial.  See Pearson v. Callahan 555 U.S. at 241.  In rejecting the prior mandatory approach, the Supreme Court recognized that "[t]here are cases in which it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right," and that such an approach burdens district court and courts of appeals with "what may seem to be an essentially academic exercise."  555 U.S. at 237.  The Supreme Court also recognized that the prior mandatory approach "departs from the general rule of constitutional avoidance and runs counter to the older, wiser judicial counsel not to pass on questions of constitutionality unless such adjudication is unavoidable."  555 U.S. at 241 (alterations omitted)(internal quotation marks omitted).  See Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012)(affirming Pearson v. Callahan's procedure, and noting that deciding qualified immunity issues on the basis of a right being not "clearly established" by prior case law "comports with our usual reluctance to decide constitutional questions unnecessarily").  Once the plaintiff establishes an inference that the defendant's conduct violated a clearly established constitutional right, a qualified immunity defense generally fails.  See Cannon v. City & Cnty. of Denver, 998 F.2d 867, 870-71 (10th Cir. 1993).

The Supreme Court recognizes seven circumstances where district courts should proceed directly to and "should address only" the clearly established prong of the qualified immunity analysis: When (i) the first, constitutional violation question "is so factbound that the decision provides little guidance for future cases"; (ii) "it appears that the question will soon be decided by a higher court"; (iii) deciding the constitutional question requires "an uncertain interpretation

of state law"; (iv) "qualified immunity is asserted at the pleading stage" and "the precise factual basis for the . . . claim . . . may be hard to identify"; (v) tackling the first element "may create a risk of bad decisionmaking" because of inadequate briefing; (vi) discussing both elements risks "bad decisionmaking," because the court is firmly convinced the law is not clearly established and is thus inclined to give little thought to the existence of the constitutional right; or (vii) the doctrine of "constitutional avoidance" suggests the wisdom of passing on the first constitutional question when "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." Kerns v. Bader, 663 F.3d 1173, 1180-81 (10th Cir. 2011)(quoting Pearson v. Callahan, 555 U.S. at 236-42). Regarding the last of these seven circumstances, the Supreme Court has clarified that courts may "avoid avoidance" and address the first prong before the second prong in cases involving a recurring fact pattern, where guidance on the constitutionality of the challenged conduct is necessary and the conduct is likely only to face challenges in the qualified immunity context. Camreta v. Greene, 131 S. Ct. at 2031-32. See Kerns v. Bader, 663 F.3d at 1181.[24] "Courts should think carefully before

---

[24] In Kerns v. Bader, the Tenth Circuit reversed the Court's decision that an officer was not entitled to qualified immunity, noting that the Court "analyzed both aspects of the qualified immunity test before agreeing" with the plaintiff that the qualified immunity defense did not protect the officer. 663 F.3d at 1183. In reversing, the Tenth Circuit stated:

> Because we agree with Sheriff White on the latter (clearly established law) question, we reverse without addressing the former (constitutional violation) question. And we pursue this course because doing so allows us to avoid rendering a decision on important and contentious questions of constitutional law with the attendant needless (entirely avoidable) risk of reaching an improvident decision on these vital questions.

663 F.3d at 1183-84. The Tenth Circuit did not analyze whether the officer violated the plaintiff's constitutional rights, and stated that guidance on the particular constitutional issue would be more appropriate in a case not involving qualified immunity: "Neither do we doubt that the scope of the Constitution's protection for a patient's hospital records can be adequately

_____

decided in future cases where the qualified immunity overlay isn't in play (e.g., through motions to suppress wrongly seized records or claims for injunctive or declaratory relief)."  Kerns v. Bader, 663 F.3d at 1187 n.5.  On remand, the Court stated:

> While the Court must faithfully follow the Tenth Circuit's decisions and opinions, the Court is troubled by this statement and the recent trend of the Supreme Court's hesitancy in § 1983 actions to address constitutional violations.  A Reconstruction Congress, after the Civil War, passed § 1983 to provide a civil remedy for constitutional violations.  See Mitchum v. Foster, 407 U.S. 225, 238-39 (1972).  In Mitchum v. Foster, the Supreme Court explained:

>> Section 1983 was originally § 1 of the Civil Rights Act of 1871 . . . and was enacted for the express purpose of "enforc(ing) the Provisions of the Fourteenth Amendment." . . . The predecessor of § 1983 was thus an important part of the basic alteration in our federal system wrought in the Reconstruction era through federal legislation and constitutional amendment.

> 407 U.S. at 238-39.  Congress did not say it would remedy only violations of "clearly established" law, but that

>> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, exception that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

> 42 U.S.C. § 1983 (emphasis added).  The Supreme Court established the qualified immunity defense in Pierson v. Ray, 386 U.S. 547 (1967), and held that officials were not liable for constitutional violation where they reasonably believed that their conduct was constitutional.  See E. Clarke, Safford Unified Sch. Dist. No. 1 v. Redding: Why Qualified Immunity is a Poor Fit in Fourth Amendment School Search Cases, 24 B.Y.U. J. Pub. L. 313, 329 (2010).  The Supreme Court first introduced the "clearly established" prong in reference to an officer's good faith and held that a compensatory award would only be appropriate if an officer "acted with such an impermissible motivation or with such disregard of the [individual's] clearly established constitutional rights that his action cannot reasonably be

- 42 -

expending 'scarce judicial resources' to resolve difficult and novel questions of constitutional or

statutory interpretation that will 'have no effect on the outcome of the case.'"   Ashcroft v. al-

_____

characterized as being in good faith."  Wood v. Strickland, 420 U.S. 308, 322 (1975).  In Harlow v. Fitzgerald, when the Supreme Court moved to an objective test, the clearly-established prong became a part of the qualified immunity test. See 457 U.S. at 818 ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights.").  It seems ironic that the federal courts would restrict a congressionally mandated remedy for constitutional violations -- presumably the rights of innocent people -- and discourage case law development on the civil side -- and restrict case law development to motions to suppress, which reward only the guilty and is a judicially created, rather than legislatively created, remedy. Commentators have noted that, "[o]ver the past three decades, the Supreme Court has drastically limited the availability of remedies for constitutional violations in" exclusionary rule litigation in a criminal case, habeas corpus challenges, and civil litigation under § 1983.  J. Marceau, The Fourth Amendment at a Three-Way Stop, 62 Ala. L. Rev. 687, 687 (2011).  Some commentators have also encouraged the courts to drop the suppression remedy and the legislature to provide more -- not less -- civil remedies for constitutional violations.  See Christopher Slobogin, Why Liberals Should Chuck the Exclusionary Rule, 1999 U. Ill. L. Rev. 363, 390-91 (1999)("Behavioral theory suggests that the exclusionary rule is not very effective in scaring police into behaving. . . .  These theories also suggest that a judicially administered damages regime . . . would fare significantly better at changing behavior at an officer level.");  Hon. Malcolm R. Wilkey, Constitutional Alternatives to the Exclusionary Rule, 23 S. Tex. L.J. 531, 539 (1982)(criticizing the exclusionary rule and recommending alternatives).  In Hudson v. Michigan, 547 U.S. 586 (2006), the Supreme Court noted that civil remedies were a viable alternative to a motion to suppress when it held that the exclusionary rule was inapplicable to cases in which police officers violate the Fourth Amendment when they fail to knock and announce their presence before entering.  See 547 U.S. at 596-97.  Rather than being a poor or discouraged means of developing constitutional law, § 1983 seems the better and preferable alternative to a motion to suppress.  It is interesting that the current Supreme Court and Tenth Circuit appear more willing to suppress evidence and let criminal defendants go free, than have police pay damages for violations of innocent citizens' civil rights.  It is odd that the Supreme Court has not adopted a clearly established prong for suppression claims; it seems strange to punish society for police violating unclear law in criminal cases, but protect municipalities from damages in § 1983 cases.

Kerns v. Bd. of Comm'rs, 888 F. Supp. 2d 1176, 1224 n.36 (D.N.M. 2012)(Browning, J.).

Kidd, 131 S. Ct. 2074, 2080 (2011).  See Camreta v. Greene, 131 S. Ct. at 2032 ("In general, courts should think hard, and then think hard again, before turning small cases into large ones.").[25]  The Tenth Circuit will remand a case to the district court for further consideration

---

[25] In Kerns v. Board of Commissioners, 888 F. Supp. 2d 1176 (D.N.M. 2012)(Browning, J.), the Court expressed concern with Justice Elena Kagan's comments about "large" and "small" cases:

> While the Court is, of course, obligated to follow faithfully the Supreme Court's decisions and opinions, the Court has always been unenlightened and even troubled by Justice Elena Kagan's comments in Camreta v. Greene about "large" and "small" cases. 131 S.Ct. at 2032. As a trial judge, the Court has tried assiduously to avoid thinking about or categorizing some cases as "large" and some as "small." It usually is not mentally healthy for a judge to put all his or her energy into "large" cases and slight "small cases"; to the litigants, their case is the most important case on the Court's docket, and it is usually wise for the judge to treat each case on which he or she is working -- at that moment -- as the most important case at that moment. Getting the decision "right," i.e. getting the law and facts correct and accurate, is obviously important, but getting it right is only one-half of a judge's task, particularly a trial judge's job. The other half of dispensing justice is the appearance of justice -- did the Court listen to the litigant's arguments, wrestle with those arguments, and deal with them in an intellectually honest way. Americans are pretty good about accepting a judicial decision -- even an adverse one -- and cease obsessing over an issue, if they are convinced that an authority figure has dressed up, taken them seriously, listened patiently and politely, wrestled with the arguments, addressed them, and accurately stated the facts. The Court believes that, if it starts looking at some cases before it as "large" and some as "small," it begins a slippery slope that does not accomplish both halves of the task of dispensing justice. The justice system depends so much on the nation respecting and accepting the courts' proceedings and decisions, because courts have very little "power" that does not depend on that acceptance. Thus, Justice Kagan's comments are not only not self-defining, but they are disturbing.

> If, perhaps, a "large" case is a Supreme Court case or one that comes from the East Coast or California, rather than one in a district court in New Mexico, then it helps to look at what cases the Supreme Court has decided for the plaintiff. The three most recent qualified immunity cases, the Supreme Court dealt with are: (i) Reichle v. Howards, 132 S.Ct. 2088 (2012); (ii) Filarsky v. Delia, 132 S.Ct. 1657 (2012); and (iii) Messerschmidt v. Millender, 132 S.Ct. 1235 (2012). In Reichle v. Howards, the Supreme Court determined that secret service agents were entitled to qualified immunity for arresting a protestor who touched the Vice

when the district court has given cursory treatment to the clearly established prong of the qualified immunity analysis.  See Kerns v. Bader, 663 F.3d at 1182.

## 2. **Clearly Established Rights in the Qualified Immunity Analysis.**

In evaluating whether the right was clearly established, a district court considers whether the right was sufficiently clear that a reasonable government employee in the defendant's shoes would understand that what he or she did violated that right.  See Casey v. W. Las Vegas Indep. Sch. Dist., 473 F.3d 1323, 1327 (10th Cir. 2007).   "A clearly established right is generally defined as a right so thoroughly developed and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'"   Lobozzo v. Colo. Dep't Of Corr.,

_____

President and held that it was not clearly established that an arrest supported by probable cause could give rise to a First Amendment violation.  See 132 S.Ct. at 2092, 2097.  In Filarsky v. Delia, the Supreme Court held that a private individual that the government hires to do its work, an internal affairs review, is entitled to seek qualified immunity for Fourth and Fourteenth Amendment violations. See 132 S.Ct. at 1660, 1668.  In Messerschmidt v. Millender, the Supreme Court held that police officers in Los Angeles, California were entitled to qualified immunity when they relied on an invalid warrant to search a home, because a reasonable officer would not have realized the error.  See 132 S.Ct. at 1241, 1250. The Supreme Court has not denied qualified immunity since 2004 in Groh v. Ramirez, 540 U.S. 551 (2004), where it held that an officer unreasonably relied on a deficient warrant.  See 540 U.S. at 565.  The Court does not think those presumably "large" cases (they are Supreme Court cases, after all) are any different -- substantively, legally, or factually -- than this case involving the search of a citizen's home after someone shot down a police helicopter and then detained that suspect for nine months until the United States realized that J. Kerns could not have shot down the helicopter.

On the flip side, treating large cases like they are large cases can create an appearance problem to the public and to the litigants -- that only big cases deserve the Court's attention.  A trial judge can overwork a "large" case.  It is better to treat even "large" cases like every other case; large cases and their litigants need to know and appreciate that they are not the only case on the court's docket, and realize that the scarcity of judicial resources applies to them too.

888 F. Supp. 2d at 1222 n.35.

- 45 -

(quoting Zweibon v. Mitchell, 720 F.2d 162, 172-73 (D.C. Cir. 1983)).

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Currier v. Doran, 242 F.3d 905, 923 (10th Cir. 2001). See Medina v. City & Cnty. of Denver, 960 F.2d 1493, 1498 (10th Cir. 1992). On the other hand, the Supreme Court has observed that it is generally not necessary to find a controlling decision declaring the "very action in question . . . unlawful." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "In determining whether the right was 'clearly established,' the court assesses the objective legal reasonableness of the action at the time of the alleged violation and asks whether 'the contours of the right [were] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" Holland ex rel. Overdorff v. Harrington, 268 F.3d 1179, 1186 (10th Cir. 2001)(quoting Saucier v. Katz, 533 U.S. at 202). A court should inquire "whether the law put officials on fair notice that the described conduct was unconstitutional" rather than engage in "a scavenger hunt for cases with precisely the same facts." Pierce v. Gilchrist, 359 F.3d 1279, 1298 (10th Cir. 2004).

The Supreme Court has clarified that the clearly established prong of the qualified immunity test is a very high burden for the plaintiff: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 at 2083. "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Reichle v. Howards, 132 S. Ct. at 2093 (quoting Ashcroft v. al-Kidd, 131 S. Ct. at 2083). While a case directly on point is not required, the Supreme Court has held that "existing precedent must have placed the statutory

or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 at 2083.  "The operation of this standard, however, depends substantially upon the level of generality at which the relevant 'legal rule' is to be identified."   Anderson v. Creighton, 483 U.S. at 639.   "The general proposition, for example, that an unreasonable search or seizure violates the Fourth Amendment is of little help in determining whether the volatile nature of particular conduct is clearly established." Ashcroft v. al-Kidd, 131 at 2084.  The level of generality at which the legal rule is defined is important, because qualified immunity shields officers who have "reasonable, but mistaken beliefs" as to the application of law to facts and operates to protect officers from the sometimes "hazy border[s]" of the law.  Saucier v. Katz, 533 U.S. at 205.

The Tenth Circuit held in Kerns v. Bader that, although "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction might make a constitutional difference."  663 F.3d at 1188 (emphasis in original).  In Kerns v. Bader, dealing with the search of a home, the Tenth Circuit explained that the relevant question "wasn't whether we all have some general privacy interest in our home," but "whether it was beyond debate in 2005 that the officers' entry and search lacked legal justification."  663 F.3d at 1183 (emphasis added).  Earlier Tenth Circuit cases, clarifying the level of generality at which a legal rule must be defined, applied a sliding scale to determine when the law is clearly established.  See Casey v. City of Fed. Heights, 509 F.3d 1278, 1284 (10th Cir. 2007)("The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."). "[W]hen an officer's violation . . . is particularly clear . . . , [the Tenth Circuit] does not require a second decision with greater specificity to clearly establish the law."  Casey v. City of Fed. Heights, 509 F.3d at 1284.  Furthermore, "general statements of the law are not inherently

incapable of giving fair and clear warning . . . ."  Hope v. Pelzer, 536 U.S. 730, 741 (2002).

**3.      Factual Disputes in the Qualified-Immunity Analysis.**

In determining whether the plaintiff has met his or her burden of establishing a constitutional violation that was clearly established, a court construes the facts in the light most favorable to the plaintiff as the non-moving party.  See Scott v. Harris, 550 U.S. 372, 378-80 (2007); Riggins v. Goodman, 572 F.3d at 1107 (noting that the Tenth Circuit "accept[s] the facts as the plaintiff alleges them").  In Thomson v. Salt Lake County, 584 F.3d 1304 (10th Cir. 2009), the Tenth Circuit explained:

> [B]ecause at summary judgment we are beyond the pleading phase of the litigation, a plaintiff's version of the facts must find support in the record: more specifically, "[a]s with any motion for summary judgment, when opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts[.]"  York v. City of Las Cruces, 523 F.3d 1205, 1210 (10th Cir. 2008)(quoting Scott [v. Harris], 550 U.S. at 380); see also Estate of Larsen ex. rel Sturdivan v. Murr, 511 F.3d 1255, 1258 (10th Cir. 2008).

Thomson v. Salt Lake Cnty., 584 F.3d at 1312.  "The Tenth Circuit, in Rhoads v. Miller, [352 F. App'x 289 (10th Cir. 2009)(unpublished)] explained that the blatant contradictions of the record must be supported by more than other witnesses' testimony[.]"  Lymon v. Aramark Corp., 728 F.Supp.2d 1222, 1249 (D.N.M. 2010)(Browning, J.)(citation omitted).

> In evaluating a motion for summary judgment based on qualified immunity, we take the facts "in the light most favorable to the party asserting the injury."  Scott v. Harris, 550 U.S. 372, 377 (2007).  "[T]his usually means adopting . . . the plaintiff's version of the facts," id. at 378, unless that version "is so utterly discredited by the record that no reasonable jury could have believed him," id. at 380.  In Scott, the plaintiff's testimony was discredited by a videotape that completely contradicted his version of the events.  550 U.S. at 379.  Here, there is no videotape or similar evidence in the record to blatantly contradict Mr. Rhoads' testimony.  There is only other witnesses' testimony to oppose his version of the facts, and our judicial system leaves credibility determinations to the jury.  And given the undisputed fact of injury, Mr. Rhoads' alcoholism and memory problems go to the weight of his testimony, not its admissibility. . . .  Mr. Rhoads

- 48 -

> alleges that his injuries resulted from a beating rendered without resistance or provocation.  If believed by the jury, the events he describes are sufficient to support a claim of violation of clearly established law under Graham v. Connor, 490 U.S. 386, 395-96 (1989), and this court's precedent.

Rhoads v. Miller, 352 F. App'x at 291-92 (internal quotation marks omitted).[26]  See Lymon v. Aramark Corp., 728 F. Supp. 2d at 1249-50 (quoting Rhoads v. Miller, 352 F. App'x at 291-92). In a concurring opinion in Thomson v. Salt Lake County, the Honorable Jerome A. Holmes, United States Circuit Judge for the Tenth Circuit, stated that courts must focus first on the legal question of qualified immunity and "determine whether plaintiff's factual allegations are sufficiently grounded in the record such that they may permissibly comprise the universe of facts that will serve as the foundation for answering the legal question before the court" before inquiring into whether there are genuine issues of material fact for resolution by the jury. 584 F.3d at 1326-27 (Holmes, J. concurring)(citing Goddard v. Urrea, 847 F.2d 765, 770 (11th Cir. 1988)(Johnson, J., dissenting))(observing that, even if factual disputes exist, "these disputes are irrelevant to the qualified immunity analysis because that analysis assumes the validity of the plaintiffs' facts")).

---

[26] Rhoads v. Miller is an unpublished opinion, but the Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it.  See 10th Cir. R. 32.1(A) ("Unpublished opinions are not precedential, but may be cited for their persuasive value.").  The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored.  However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted).  The Court finds that Rhoads v. Miller and United States v. Gibson, 348 F. App'x 392 (10th Cir. 2009)(unpublished), have persuasive value with respect to a material issue, and will assist the Court in its disposition of this Memorandum Opinion.

## LAW REGARDING PROCEDURAL DUE-PROCESS RIGHTS

The Fourteenth Amendment states: "No State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV.  The Due Process Clause encompasses two distinct forms of protection: (i) procedural due process, which requires a state to employ fair procedures when depriving a person of a protected interest; and (ii) substantive due process, which guarantees that a state cannot deprive a person of a protected interest for certain reasons.  See, e.g., Cnty. of Sacramento v. Lewis, 523 U.S. 833, 845-46 (1998).  "Under either form of protection, however, a person must have a protected interest in either life, liberty, or property."  Chavez-Rodriguez v. City of Santa Fe, No. CIV 07-0633, 2008 WL 5992271, at *6 (D.N.M. Oct. 9, 2008)(Browning, J.).  The Tenth Circuit prescribes a two-step inquiry in determining whether an individual's procedural due-process rights were violated: (i) "Did the individual possess a protected property interest to which due process protection was applicable?"; and (ii) "Was the individual afforded an appropriate level of process?"  Camuglia v. The City of Albuquerque, 448 F.3d 1214, 1219 (10th Cir. 2006)(internal quotations omitted).

"The Constitution does not create or define the contours of 'liberty' or 'property,' the 'broad and majestic terms' enshrined in the Fourteenth Amendment."  Farthing v. City of Shawnee, 39 F.3d 1131, 1135 (10th Cir. 1994)(quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 571 (1972)).  "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577.  "Such an interest arises not from the Due Process Clause of the Constitution itself, but is 'created by independent sources such as a state or federal statute, a municipal charter or ordinance, or an implied or express contract.'"  Teigen v. Renfrow, 511 F.3d

1072, 1079 (10th Cir. 2007).  See Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577

("Property interests, of course, are not created by the Constitution.  Rather they are created and

their dimensions are defined by existing rules or understandings that stem from an independent

source such as state law -- rules or understandings that secure certain benefits and that support

claims of entitlement to those benefits."); Farthing v. City of Shawnee, 39 F.3d at 1135 ("Rather,

property interests, which are the subject of the present litigation, 'are created and their

dimensions are defined by existing rules or understandings that stem from an independent source

such as state law.'" (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. at 577)); Paul v.

Davis, 424 U.S. at 710 ("[Liberty and property] interests attain . . . constitutional status by virtue

of the fact that they have been initially recognized and protected by state law.").

   "[O]nce it is determined that the Due Process Clause applies, 'the question remains what

process is due.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 541 (1985)(citing

Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).  "An essential principle of due process is that a

deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing

appropriate to the nature of the case.'"  Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542

(citing Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).  "[D]ue process

is flexible and calls for such procedural protections as the particular situation demands."  Mathews

v. Eldridge, 424 U.S. at 334 (internal quotation marks and brackets omitted).  The Supreme

Court has described

> "the root requirement" of the Due Process Clause as being "that an individual be
> given an opportunity for a hearing before he is deprived of any significant
> property interest."  This principle requires "some kind of a hearing" prior to the
> discharge of an employee who has a constitutionally protected property interest in
> his employment.
>
> . . . .

> [T]he pretermination "hearing," though necessary, need not be elaborate.  We have pointed out that "[t]he formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings."   In general, "something less" than a full evidentiary hearing is sufficient prior to adverse administrative action.

Cleveland Bd. of Educ. v. Loudermill, 470 U.S. at 542, 545 (footnote omitted)(citations omitted).

The United States Court of Appeals for the Second Circuit has stated:

> The Supreme Court . . . explained that procedural due process is a flexible standard that can vary in different circumstances depending on "'the private interest that will be affected by the official action'" as compared to "the Government's asserted interest, 'including the function involved' and the burdens the Government would face in providing greater process."   Hamdi v. Rumsfeld, 542 U.S. 507, ----, 124 S. Ct. 2633, 2646 . . . (2004)(quoting Mathews v. Eldridge, 424 U.S. at 335 . . . ).  A court must carefully balance these competing concerns, analyzing "'the risk of an erroneous deprivation' of the private interest if the process were reduced and the 'probable value, if any, of additional or substitute safeguards.'"   Id. (quoting Mathews v. Eldridge, 424 U.S. at 335 . . .).

United States v. Abuhamra, 389 F.3d 309, 318 (2d Cir. 2004).  The hearing required depends on: (i) the nature of the private interest at stake; (ii) the risk of erroneous deprivation given the procedures already guaranteed, and whether additional procedural safeguards would prove valuable; and (iii) the government's interest and the burdens that additional procedures might impose.  See Mathews v. Eldridge, 424 U.S. at 335.  For example, "[w]here . . . the state must act quickly, a meaningful postdeprivation hearing is adequate."  Clark v. City of Draper, 168 F.3d at 1189.  See Spielman v. Hildebrand, 873 F.2d 1377, 1385 (10th Cir. 1989)(removal of a child from parents' custody requires predeprivation hearing "except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event."  (internal quotation marks omitted)).

1.     **Stigma-Plus Claims Generally.**

The Supreme Court explained in Paul v. Davis:

> While we have in a number of our prior cases pointed out the frequently drastic effect of the "stigma" which may result from defamation by the government in a variety of contexts, this line of cases does not establish the proposition that reputation alone, apart from some more tangible interests such as employment, is either "liberty" or "property" by itself sufficient to invoke the procedural protection of the Due Process Clause.

424 U.S. at 701.  In <u>Paul v. Davis</u>, the plaintiff's name and photograph appeared on a flyer with the caption "Active Shoplifters" that was distributed to local area merchants.  424 U.S. at 695-96.  The Supreme Court explained:  "The 'stigma' resulting from the defamatory character of the posting was doubtless an important factor in evaluating the extent of harm worked by that act, but we do not think that such a defamation, standing alone, deprived [the plaintiff] of any 'liberty' protected by the procedural guarantees of the Fourteenth Amendment."  424 U.S. at 709.

> The Tenth Circuit's stigma-plus standard requires a plaintiff to demonstrate:
>
> [(i)] the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and [(ii)] the plaintiff experienced some governmentally imposed burden that significantly altered [his or] her status as a matter of state law.

<u>Kennedy v. Smith</u>, No. 07-7035, 2007 WL 4532823 at * 4 (10th Cir. December 26, 2007).  "Tenth Circuit caselaw on stigma-plus claims generally arises out of employment-law cases." <u>Bell v. Bd. of Educ. of the Albuquerque Pub. Sch.</u>, No. CIV 06-2237 JB/ACT, 2008 WL 4104118 (D.N.M. May 6, 2008)(Browning, J.)(citing <u>Six v. Henry</u>, 42 F.3d 582, 585 (10th Cir. 1994); <u>Corbitt v. Andersen</u>, 778 F.2d 1471, 1474-75 (10th Cir. 1985)).  To satisfy a liberty-interest claim, however, a plaintiff must demonstrate:

> [(i)] to be actionable, the statements must impugn the good name, reputation, honor, or integrity of the employee[; (ii)] the statements must be false[; (iii)] the statements must occur in the course of terminating the employee or must foreclose other employment opportunities[; a]nd [(iv)] the statements must be published. These elements are not disjunctive, all must be satisfied to demonstrate deprivation of the liberty interest.

- 53 -

Evers v. Regents of Univ. of Colo., 509 F.3d 1304, 1308 (10th Cir. 2007).

An alleged defamatory or stigmatizing statement by a government actor, standing alone, is insufficient to state a due-process claim.  See McGhee v. Draper, 639 F.2d 639, 643 (10th Cir. 1981) (stating that "[s]tigmatization or reputational damage alone, no matter how egregious, is not sufficient to support a § 1983 cause of action.")(citing Paul v. Davis, 424 U.S. 693, 697-713 (1976)).

A "stigma plus," due-process claim cannot survive solely on the basis that the government said something about the plaintiff that is allegedly inaccurate; the claim must be based on a denial of due process to contest the allegedly erroneous statement.  Segal v. City of New York, 459 F.3d 207, 214 (2d Cir. 2006)(holding that, where the plaintiff's protected interest was her reputation and professional interest, a post-deprivation hearing was sufficient to defeat a stigma-plus claim).   In Segal v. City of New York, the United States Court of Appeals for the Second Circuit explained:

> Because stigma plus is a species within the phylum of procedural due process claims, however, it is not enough that the plaintiff has demonstrated the deprivation of her liberty interest; in order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that her liberty was deprived without due process of law. Stated differently, the availability of adequate process defeats a stigma-plus claim.

459 F.3d at 214.

Due-process concerns may be implicated only when the subject of the stigmatizing statement is denied a hearing to clear his or her name.  See Gwinn v. Awmiller, 354 F.3d at 1216 ("Where a person's good name, reputation, or integrity is at stake because of what the government is doing to him, a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name.")(internal quotations omitted).

"A person who establishes a liberty-interest deprivation is entitled to a name-clearing hearing."
Evers v. Regents of Univ. of Colo., 509 F.3d at 1308.

A plaintiff who fails to assert his or her right to a due-process hearing cannot assert a stigma-plus due process claim.  See Winskowski v. City of Stephen, 442 F.3d 1107, 1110-11 (8th Cir. 2006)(noting that it had "previously held that a government employee cannot recover for a due process violation where the employee simply failed to avail himself of the post-termination process that was available.")(citing Schleck v. Ramsey County, 939 F.2d 638, 642 (8th Cir. 1991)(stating that "it is undisputed that [the plaintiffs] were offered an extensive post-termination hearing, which would have allowed the introduction of evidence and cross-examination of witnesses . . . . That such a hearing never was conducted because [the plaintiffs] declined to avail themselves of it does not give rise to a due process violation)); Quinn v. Shirey, 293 F.3d 315, 321-22 (6th Cir. 2002)(similar); Rosenstein v. City of Dallas, 876 F.2d 392, 396 (5th Cir. 1989)(similar).

The law requires a tangible injury to support a stigma-plus claim.  See Phelps v. The Wichita Eagle-Beacon, 886 F.2d 1262, 1268-69 (10th Cir. 1989)(holding that future harm to prospective relationships and damages to prospective employment opportunities are too intangible to constitute a deprivation of a property or liberty interest).  In Phelps v. The Wichita Eagle-Beacon, the attorney brought suit against employees of a newspaper and a former assistant attorney general for articles that he contended "placed a defamatory cloud over his employment opportunities."  886 F.3d at 1266, 1268.  The Tenth Circuit noted that the plaintiff had "merely . . . alleged speculative future harm to prospective relationships as a result of the generalized damage to his reputation."  886 F.3d at 1268.  The Tenth Circuit noted that the "plaintiff ha[d] not been foreclosed from practicing law.  At most, he allege[d] that the newspaper articles made

him less attractive to potential clients."   886 F.3d at 1269.   The Tenth Circuit held "[t]hat allegation is insufficient to state a deprivation of a liberty or property interest."   886 F.3d at 1269.

In Workman v. Jordan, 32 F.3d 475 (10th Cir. 1994), the plaintiff asserted a due-process claim for deprivation of a liberty interest based on "damage to his reputation due to allegedly stigmatizing documents placed in his personnel file" by defendants after his reinstatement to a job. 32 F.3d at 480.   The Tenth Circuit found that the plaintiff had not shown lost-employment opportunities and was unable to make a "sufficient showing of false stigmatizing statements entangled with his interest in employment."   32 F.3d at 481.   The Tenth Circuit noted that, because the plaintiff was not deprived of a liberty interest, "due process did not require an adequate name-clearing hearing."   32 F.3d at 482.

To state a stigma-plus, due-process claim, a plaintiff must establish that the allegedly stigmatizing information was published.   See Workman v. Jordan, 32 F.3d at 481 (10th Cir. 1994); Harrison v. Bd. of City Comm'rs., 775 F.Supp. 365, 367 (D. Colo. 1991)(explaining that intra-government disclosure of information does not constitute publication in the context of a liberty-interest claim.  In Orozco v. County of Monterey, 941 F. Supp. 930 (N.D. Ca. 1996), the district court noted:

> In order for plaintiff to satisfy the 'publication' requirement, [the] plaintiff must plead that the defendants published the allegedly false and stigmatizing information to the public.  [The p]laintiff has not so alleged. [The p]laintiff has alleged only that the information was disseminated within her department and to law enforcement departments in the course of the investigation of plaintiff's activities.  This is not sufficient.

941 F. Supp. at 939.   See Diehl v. Albany County Sch. Dist. No. 1, 694 F.Supp 1534, 1537 (D. Wy. 1988)(explaining that statements made about a coach by a school board regarding nonrenewal were not published, because "[r]easons for termination or nonrenewal given to an

employee in private cannot impair the employee's interest in his good name, reputation, honor, or integrity. . . .  Statements made in the course of a judicial proceeding also do not support a liberty interest claim.")(internal quotations and citations omitted).  The Tenth Circuit requires actual dissemination of information for a plaintiff to satisfy the publication prong of the stigma-plus standard.

> Other circuits have held that placement of false and stigmatizing information in an employee personnel file may constitute publication if the file is either available to the public or likely to be disclosed to prospective employers . . . .  [T]he Tenth Circuit appears to require dissemination in lieu of a more lenient 'likely to be disseminated' or 'available to the public' standard.

Bell v. Bd. of County Com'rs of Jefferson County, 343 F.Supp.2d 1016, 1021 (D. Kan. 2004)(citing Harris v. Blake, 798 F.2d 419, 419 n. 2 (10th Cir.1986)).

In Goss v. Lopez, 419 U.S. 565 (1975), the Supreme Court noted that students, on the basis of state law, had legitimate claims of entitlement to a public education.  See 419 U.S. at 573.  The Supreme Court explained that "the State is constrained to recognize a student's legitimate entitlement to a public education as a property interest which is protected by the Due Process Clause and which may not be taken away for misconduct without adherence to the minimum procedures required by that Clause."  419 U.S. at 574.  School authorities suspended students, for periods up to ten days, based on charges of misconduct in Goss v. Lopez.  See 419 U.S. at 575.  The Supreme Court noted: "If sustained and recorded, those charges could seriously damage the students' standing with their fellow pupils and their teachers as well as interfere with later opportunities for higher education and employment."  419 U.S. at 575.  In Goss v. Lopez, the appropriate name-clearing process, in connection with a suspension of 10 days or less, is "that the student be given oral or written notice of the charges against him and, if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the

story."  419 U.S. at 551.

### 2.        Stigma-Plus Claims Related to Sex Offender Registries.

"'Where a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him,' a protectible liberty interest may be implicated that requires procedural due process in the form of a hearing to clear his name."  Gwinn v. Awmiller, 354 F.3d at 1216 (quoting Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1558 (10th Cir.1993)).  Asserting damage to one's reputation "is not enough to implicate due process protection" -- a plaintiff must satisfy what is sometimes described as a "stigma plus" standard, demonstrating that

> (1) the government made a statement about him or her that is sufficiently derogatory to injure his or her reputation, that is capable of being proved false, and that he or she asserts is false, and (2) the plaintiff experienced some governmentally imposed burden that "significantly altered [his or] her status as a matter of state law.

Gwinn v. Awmiller, 354 F.3d at 1216 (alteration in original)(quoting Paul v. Davis, 424 U.S. at 710-11)).

In Connecticut Department of Public Safety v. Doe, the Supreme Court reviewed the Second Circuit's decision to enjoin the public disclosure of Connecticut's sex offender registry; Respondent John Doe filed a 42 U.S.C. § 1983 claim, on behalf of himself and other similarly situated sex offenders, against the state agencies and officials responsible for compiling the sex offender registry and posting it on the Internet, alleging that Connecticut's "Megan's Law"[27]

---

[27] The United States Court of Appeals for the Third Circuit described the origins of "Megan's Law" in E.B. v. Verniero, 119 F.3d 1077 (3d Cir. 1997):

> On July 29, 1994, Megan Kanka, a seven year old child, was abducted, raped, and murdered near her home.  The man who confessed to Megan's murder lived in a house across the street from the Kanka family and had twice been convicted of

violated the due process clause of the Fourteenth Amendment.  538 U.S. at 5-6.  "Specifically, respondent alleged that he is not a dangerous sexual offender, and that the Connecticut law deprives him of a liberty interest -- his reputation combined with the alteration of his status under state law -- without notice or a meaningful opportunity to be heard."  538 U.S. at 6 (internal quotation marks omitted).  The Second Circuit had concluded that the Connecticut law violated the sex offender's liberty interest, because "(1) the law's stigmatization of respondent by 'implying' that he is 'currently dangerous,' and (2) its imposition of 'extensive and onerous' registration obligations on respondent."  538 U.S. at 6.  In the Second Circuit's view, the liberty interest required the state agencies and officials to provide the sex offender with an "opportunity to demonstrate that he was not 'likely to be currently dangerous.'"  538 U.S. at 6.  The Supreme Court reversed, stating that, "even assuming, *arguendo*, that respondent has been deprived of a liberty interest, due process does not entitle him to a hearing to establish a fact that is not material under the Connecticut statute."  538 U.S. at 7.  The Supreme Court noted that, under Connecticut's law, convicted sex offenders must register regardless if they are currently dangerous: "the law's requirements turn on an offender's conviction alone -- a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest."  538 U.S. at 7.

---

sex offenses involving young girls.  Megan, her parents, local police, and the members of the community were unaware of the accused murderer's history; nor did they know that he shared his house with two other men who had been convicted of sex offenses.

E.B. v. Verniero, 119 F.3d at 1081.  This incident prompted New Jersey, the state where it occurred, to enact legislation commonly referred to as "Megan's Law," which created a sex offender registry and community notifications, E.B. v. Verniero, 119 F.3d at 1081; other states followed suit with their own versions of Megan's Law, and Congress began requiring states to maintain similar systems as a condition for receipt of certain law enforcement funds, see Carr v. United States, 560 U.S. 438, 441 (2010).

Since <u>Connecticut Department of Public Safety v. Doe</u>, the Tenth Circuit has twice addressed procedural due-process claims in the context of sex offender registries.  In <u>Gwinn v. Awmiller</u>, the plaintiff was charged in Colorado state court in 1987 with robbery, aggravated robbery, and sexual assault; he pled guilty to robbery, and the sexual assault charge was dismissed.  <u>See</u> 254 F.3d at 1214.  The Colorado Department of Corrections ("CDOC") required him to complete a treatment program for sex offenders while incarcerated; he initially admitted that he committed the sexual assault and completed the first phase of the treatment program, but CDOC officials removed him after he violated prison disciplinary rules.  254 F.3d at 1214-15.  When he was released on parole in 1995, his parole officer required him to register as a sex offender and attend a community treatment program.  <u>See</u> 254 F.3d at 1215.  He was subsequently convicted for possessing a controlled substance and released on parole, but his parole was revoked when he refused to participate in the sex offender treatment program.  <u>See</u> 254 F.3d at 1215.  In 2000, and back in prison, the CDOC held an administrative hearing to determine if the plaintiff should be classified as a sex offender; the plaintiff did not attend, but the hearing panel reviewed a written statement the plaintiff submitted and the pre-investigation report from the plaintiff's 1987 conviction, which included "an account of a sexual assault allegedly committed" by the plaintiff.  254 F.3d at 1217.  The hearing panel issued written findings that the plaintiff "behaved in a sexually violent and abusive manner," and "that his behavior could threaten the safety of the public upon release, or the safety of prison staff because he had not offered any credible explanation that would avoid the conclusion that he had behaved in a sexually violent and/or abusive manner."  254 F.3d at 1218 (internal quotation marks and brackets omitted).  The plaintiff filed a pro se civil rights action seeking an injunction preventing the prison officials from classifying him as a sex offender: he argued that the CDOC officials

- 60 -

violated his due-process rights when they "applied an improper presumption -- that he was a sex offender -- and required him to rebut it," and did not provide him with an attorney for the hearing. 254 F.3d at 1218. The trial court granted CDOC's motion for summary judgment, which the Tenth Circuit affirmed; the Tenth Circuit said that, before an inmate who has not previously been convicted of a sex offense may be classified as a sex offender for prison treatment programs, he must receive "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action," and that "there must be some evidence to support the hearing panel's decision, and the decisionmaker must be impartial." 254 F.3d at 1218-19 (citations omitted). The Tenth Circuit held that the hearing panel met these requirements, and so did not violate the plaintiff's due process rights by applying an improper presumption. See 254 F.3d at 1219.

The plaintiff also argued that his parole officer violated his due process rights by requiring him to register as a sex offender after he was released from prison, because "he will be forced to live in a society labeled and stigmatized as a sex offender though he has never been convicted in a court of law for any sexual offenses, and that he has been denied employment and admission into substance abuse programs because of the registration requirements." 254 F.3d at 1221-22 (internal quotation marks and citations omitted). The Tenth Circuit noted that the plaintiff had "sufficiently alleged that his classification as a sex offender outside the prison walls implicated a liberty interest," but that the record was insufficient to evaluate what process, if any, the parole officer gave the plaintiff; the Tenth Circuit said the trial court improperly granted the defendants' motion for summary judgment, because the defendants had not addressed that claim in their motion, and the plaintiff had not provided evidence sufficient to resolve the allegations.

254 F.3d at 1224.  On remand, the Tenth Circuit directed the district court to determine whether the registration requirements significantly altered the plaintiff's status to implicate a liberty interest, and if so, what procedural protections the due-process clause requires.  See 254 F.3d at 1224.

In Brown v. Montoya, 662 F.3d 1152 (10th Cir. 2011), the plaintiff had pled guilty to two counts of false imprisonment in New Mexico state court; after he was released from custody, his parole officer required him to register as a sex offender and placed him in the sex offender probation unit, based on the probation officer's understanding of New Mexico law and information he reviewed that indicated that the victim in the plaintiff's false imprisonment case was a minor.  See 662 F.3d at 1157.  The plaintiff "sought and won in state court an order removing his name from the sex offender registry and removing him from the sex offender probation unit."  662 F.3d at 1157.  He then filed a 42 U.S.C. § 1983 action against his probation officer and the New Mexico Secretary of Corrections, alleging that he was wrongly directed to register as a sex offender and wrongly placed in the sex offender probation unit; both defendants moved to dismiss based on qualified immunity.  See 662 F.3d at 1157-58.

Analyzing the plaintiff's due-process claim under the deferential motion to dismiss standards, the Tenth Circuit said that "assuming the facts alleged in his Complaint are true, Mr. Brown (1) had a liberty interest in not being placed on sex offender probation or on the sex offender registry; (2) he was deprived of that interest; and (3) he received inadequate process before the government imposed such a deprivation."  662 F.3d at 1168-69.  The Tenth Circuit noted that "a false statement that a person is a sex offender is 'sufficiently derogatory to injure his reputation,'" and that requiring someone to register as a sex offender significantly alters his legal status, because "sex offender registration carries steep penalties," which, if disregarded,

- 62 -

lead to felony prosecution, and because registering as a sex offender restricts that person's ability to travel or obtain employment.  662 F.3d at 1169 (internal brackets omitted).  Regarding the amount of process due, the Tenth Circuit said that "[t]he procedural protections owed to a person before being classified as a sex offender outside of prison are at least as extensive as those owed to a prison inmate," and the plaintiff alleged that he had not received any process before the probation officer required him to register.  662 F.3d at 1170.  The Tenth Circuit stated that, at the time of the probation officer's actions, the law was clearly established "that directing a person to register as a sex offender outside of prison triggers at least" the same level of process as what is due to an inmate.  662 F.3d at 1171.  The Tenth Circuit affirmed the district's denial of the probation officer's motion to dismiss, because it found that the law during the relevant time was clearly established: "Accepting as true Mr. Brown's allegation that Officer Montoya had no factual basis to believe that his victim was a minor, it should have been apparent to a reasonable officer that classifying Mr. Brown as a sex offender violated his clearly established procedural due process right."  662 F.3d at 1171.

### LAW REGARDING FEDERAL AND NEW MEXICO SEX OFFENDER REGISTRATION AND NOTIFICATION ACTS

The Supreme Court has stated that "[s]ex offenders are a serious threat in this Nation. The victims of sex assault are most often juveniles, and when convicted sex offenders reenter society, they are much more likely than any other type of offender to be re-arrested for a new rape or sexual assault."  Connecticut Dept. of Public Safety v. Doe, 538 U.S. at 4 (internal quotation marks and brackets omitted)(quoting McKune v. Lile, 536 U.S. 24, 32-33, (2002)(plurality opinion)).

By 2006, every state had enacted a sex offender registration law, see United States v.

Gibson, 348 F. App'x 392, 394 n.1 (10th Cir. 2009)(unpublished); in an effort to make the state schemes "more comprehensive, uniform, and effective," Congress enacted the Sex Offender Registration and Notification Act, 42 U.S.C. §§ 16911-16929 ("SORNA"), as part of the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, 120 Stat. 587.  Carr v. United States, 560 U.S. at 441.  SORNA requires each state to maintain a jurisdiction-wide sex offender registry, see 42 U.S.C. § 16912, and specifies the information to be included in the registry, such as the sex offender's name, social security number, address where the sex offender resides, is an employee, or is a student, license plate number and description of the sex offender's vehicle, physical description, criminal history, current photograph, and a set of fingerprints and DNA sample, see 42 U.S.C. § 16914.  SORNA directs states to

> "provide a criminal penalty" for a sex offender's failure to register, [42 U.S.C.] § 16913(e); "make available on the Internet . . . all information about each sex offender in the registry," id. § 16918(a); and "provide the information in the registry . . . about that offender" to various national and local law enforcement agencies and community organizations, id. § 16921(b).

United States v. Gibson, 348 F. App'x at 394 n.1 (quoting United States v. Gould, 568 F.3d 459, 463 n.1 (4th Cir. 2009)).  SORNA also provides that "[t]he Federal Government, jurisdictions, political subdivisions of jurisdictions, and their agencies, officers, employees, and agents shall be immune from liability for good faith conduct under this subchapter."  42 U.S.C. § 16929.

New Mexico has adopted the New Mexico SORNA: the act's purpose is to assist law enforcement agencies in protecting their communities by:

> (1) requiring sex offenders who are residents of New Mexico to register with the county sheriff of the county in which the sex offender resides;

> (2) requiring sex offenders who are residents in other states, but who are employed in New Mexico or who attend school in New Mexico, to register with the county sheriff of the county in which the sex offender works or attends school;

(3) requiring the establishment of a central registry for sex offenders; and

(4) providing public access to information regarding certain registered sex offenders.

N.M. Stat. Ann. § 29-11A-2(B).  A "sex offender" means a person who "has been convicted of a sex offense pursuant to state, federal, tribal or military law," and (i) is a New Mexico resident, (ii) changes residence to New Mexico, (iii) lives in a shelter, halfway house, transitional living facility, or multiple locations in New Mexico; or (iv) is a resident of another state but works or attends school in New Mexico.   N.M. Stat. Ann. § 29-11A-3(H).   "Conviction" means "a conviction in any court of competent jurisdiction," and "sex offense" is defined as one of the thirteen listed New Mexico offenses -- such as aggravated criminal sexual penetration or criminal sexual penetration in the first, second, third or fourth degree, criminal sexual contact in the fourth degree, criminal sexual contact or a minor in the second, third or fourth degree, false imprisonment when committed with the intent to inflict a sexual offense, aggravated indecent exposure -- "or their equivalents in any other jurisdiction[.]"  N.M. Stat. Ann. § 29-11A-3(B), (I).

A sex offender who is a New Mexico resident must register with the county sheriff for the county in which the sex offender resides no later than five business days after being released from custody; a sex offender who "changes his or her residence to New Mexico" must register with the county sheriff for the New Mexico county in which he or she resides no later than five days after his or her arrival in New Mexico.  N.M. Stat. Ann. § 29-11A-4(A), (B).  The sex offender must provide certain registration information, such as his or her legal name, date of birth, social security number, address, place of employment, sex offense conviction, electronic-mail addresses, and telephone numbers; the county sheriff is to obtain the sex offender's photograph, a set of fingerprints, physical description of the offender, and a DNA sample to

include in the sex offender DNA identification system.  See N.M. Stat. Ann. § 29-11A-4(B), (E).

Depending on the sex offense conviction, a sex offender must verify and update registration

information with the county sheriff every ninety days for the sex offender's natural life or every

six months for ten years; an out-of-state registrant -- defined as a person who "establishes a

residence in New Mexico while the person is required to register as a sex offender in another

state or territory," N.M. Stat. Ann. § 29-11A-3(F) -- is to verify registration information for the

longer of "(a) the duration of time remaining in the registrant's convicting jurisdiction and at the

same frequency as required in that state or territory, but no less than once every six months; or

(b) the duration of time remaining that would be required for the equivalent offense in New

Mexico," N.M. Stat. Ann. § 29-11A-4(L).

While the New Mexico SORNA does not provide guidance on how to determine whether

an out-of-state conviction is "equivalent" to one of the listed New Mexico offenses, the Supreme

Court of New Mexico recently held that an offense is equivalent

> if the defendant's actual conduct that gave rise to the out-of-state conviction
> would have constituted one of the twelve enumerated offenses requiring
> registration pursuant to SORNA.  When the defendant's out-of-state conviction
> results from a plea agreement, courts may look to the charging documents, the
> defendant's written plea agreement, and the transcript of the plea hearing to
> determine the defendant's actual conduct and whether such conduct would have
> constituted one of the twelve enumerated offenses.

State v. Hall, 2013-NMSC-001 ¶ 1, 294 P.3d 1235.  In State v. Hall, the defendant was required

to register as a sex offender in California after he was convicted for "annoying or molesting" a

child under the age of eighteen, contrary to Cal. Penal Code § 647.6(a)(1).  2013-NMSC-001 ¶ 2.

After he moved to New Mexico, he was charged with failing to register as a sex offender under

the New Mexico SORNA; he moved to dismiss the charge, arguing that his California offense

was not an equivalent to one of New Mexico's listed offenses.  See 2013-NMSC-001 ¶¶ 3-4.

The district court denied the motion, and the defendant entered a conditional guilty plea, allowing him to appeal the denial of his motion to dismiss; the Court of Appeals of New Mexico reversed that ruling, because "a conviction for criminal sexual contact of a minor," one of New Mexico's enumerated offenses under the New Mexico SORNA, "requires touching or the application of force, while California's 'annoying or molesting' statute does not."  2013-NMSC-001 ¶ 5.  The Supreme Court of New Mexico disagreed with the Court of Appeals' analysis:

> We read SORNA to mean that the defendant's offense in the foreign state, rather than the statute under which the defendant was convicted, must be the equivalent of an enumerated registrable offense in New Mexico.  To determine equivalence, courts must look beyond the elements of the conviction to the defendant's actual conduct.  To hold otherwise would be to undermine the legislative intent of SORNA and allow sex offenders convicted in other jurisdictions to avoid registration, even when their conduct would have supported a registrable conviction in New Mexico.  This is not to say that the elements of the out-of-state offense are entirely irrelevant.  When the elements of the out-of-state sex offense are precisely the same elements of a New Mexico sex offense, the inquiry is at an end.  However, even when the elements are dissimilar, courts should consider the defendant's underlying conduct to determine whether the defendant's conduct would have required registration in New Mexico as a sex offender.

2013-NMSC-001 ¶ 18.  Because the record was inadequate to evaluate whether the defendant's conduct that gave rise to the California conviction would be an equivalent offense in New Mexico, the Supreme Court of New Mexico remanded the case to the district court.  See 2013-NMSC-001 ¶¶ 26, 30.

The question whether a person with an out-of-state conviction must register as a sex offender in New Mexico came before the New Mexico court in State v. Hall through a motion to dismiss a charge of failing to register as a sex offender, see 2013-NMSC-001 ¶ 3, but a person with an out-of-state conviction may also bring that question before New Mexico courts by filing a declaratory action, such as the petitioner did in Vives v. Verzino, 2009-NMCA-083, 146 N.M. 673, 213 P.3d 823.  In that case, the petitioner had pled nolo contendere to engaging in a sex act

with a child under eighteen years of age, contrary to Fla. Stat. § 794.041(2)(b).  See 2009-NMCA-083 ¶ 2.  The petitioner moved to New Mexico, and the local sheriff told him that, unless he registered, he would be charged and prosecuted with a fourth-degree felony for failing to register under the New Mexico SORNA.  See 2009-NMCA-083 ¶ 3.  The petitioner registered, but filed a petition for declaratory and injunctive relief, naming the county sheriff and the New Mexico the DPS as respondents, seeking to be removed from the sex offender registry.  See 2009-NMCA-083 ¶ 4.  The petitioner admitted that he was required to register as a sex offender in Florida and that the Florida statute was equivalent to a sex offense in New Mexico, but he argued that the Florida court did not adjudicate his guilt, because he pled nolo contendere, and thus, he did not have a "conviction" that subjected him to New Mexico registration requirements. 2009-NMCA-083 ¶ 11.  The Court of Appeals of New Mexico rejected the petitioner's argument:

> Section 29-11A-3(A) defines a "conviction" as "a conviction in any court of competent jurisdiction and includes a deferred sentence, but does not include a conditional discharge."  This definition very clearly exempts conditional discharges and only conditional discharges.  The doctrine of *expressio unius est exclusio alterius* -- the expression or inclusion of one thing indicates exclusion of the other -- is applicable here.  The statute by negative implication simply does not include dispositions similar to conditional discharges, like conditional discharges, or akin to conditional discharges.  Petitioner's argument urges for a redefining of what is already defined as a conviction by Florida and by implication in New Mexico.

2009-NMCA-083 ¶ 17 (internal citation omitted).

## ANALYSIS

Chacon moves the Court to enter summary judgment in her favor on Kvech's claim that she, acting under color of state law, deprived him of life, liberty, and property without due process of law, in violation of the Fourteenth Amendment to the United States Constitution, brought pursuant to 42 U.S.C. § 1983.  Chacon argues that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law, because qualified immunity

and statutory immunity protect her.  Kvech argues that Chacon violated his constitutional rights when Chacon disregarded Judge McDonald's order that said Kvech's Colorado conviction was not an equivalent offense under the New Mexico SORNA when she continued requiring Kvech to register as a sex offender for over one year, and when she added the "force" element to his conviction without providing an opportunity for him to defend himself.  The undisputed evidence shows that, while Chacon violated Kvech's constitutional rights, Chacon is entitled to qualified immunity and judgment as a matter of law, because the law was not clearly established what process, if any, was due a person who had been convicted of a sex offense in state A, was required to register as a sex offender in state A, and moved to state B with different sex offender registration requirements.  Chacon is not, however, entitled to statutory immunity, because a factual question exists whether she was acting in good faith after she received Judge McDonald's opinion, stating that Kvech's Colorado conviction was not equivalent to a sex offense under the New Mexico SORNA.  The Court will thus grant the MSJ in part and deny it in part.

I.   **QUALIFIED IMMUNITY PROTECTS CHACON BECAUSE, ALTHOUGH CHACON VIOLATED KVECH'S CONSTITUTIONALLY-PROTECTED LIBERTY INTEREST WITHOUT PROVIDING THE PROPER PROCEDURAL PROTECTIONS, THE LAW WAS NOT CLEARLY ESTABLISHED AT THE TIME.**

When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct.  See Riggins v. Goodman, 572 F.3d at 1107.

In the Complaint, Kvech argues that

the Defendants, under the color of state law, deprived Plaintiff's life, liberty and property without due process of law by falsely accusing, harassing, causing injury to, arresting and jailing Plaintiff under the pretense that he was a sex offender

despite actual knowledge that by law and order of the Honorable Louis P. McDonald of the Thirteenth Judicial Court Plaintiff was not a sex offender and not subject to registration and publication and other associated laws.

Complaint ¶ 29, at 6-7.  The Court has dismissed the claims against all of the Defendants except for Chacon; the undisputed facts show that she was not involved in arresting or jailing Kvech for failing to register as a sex offender.

The facts also show that Chacon had the authority to remove Kvech from the sex offender registry consistent with the DPS policy; that she did not remove Kvech's name from the state sex offender registry after she received Judge McDonald's opinion, which Judge McDonald issued on October 23, 2008, which dismissed Kvech's criminal charges for failing to register, and which stated that the Colorado conviction was not equivalent to a sex offense in New Mexico; that she sent a letter to Kvech directing him to register as a sex offender on June 3, 2010; and that, after the DPS policy changed, she sent a final letter on July 12, 2010 stating that Kvech did not have to register as a sex offender.  Chacon's actions violated Kvech's liberty interest, but the law was not clearly established during the time of her actions that a person's liberty interest would be implicated when that person had been convicted of a sex offense in state A, was required to register as a sex offender in state A, and then moved to state B; it was also not clearly established what process was required in such a situation.[28]

---

[28] Although the Court will analyze both prongs of the qualified immunity analysis, it recognizes that the Supreme Court and the Tenth Circuit has stated that district courts should proceed directly to the clearly established prong in seven circumstances, and the Court must follow that guidance faithfully and fully.  See Pearson v. Callahan, 555 U.S. at 236-42.  The Court acknowledges that several of the circumstances may apply here, including, for example, (i) deciding the constitutional question requires "an uncertain interpretation of state law," Kerns v. Bader, 663 F.3d 1173, 1180-81 (10th Cir. 2011)(quoting Pearson v. Callahan, 555 U.S. at 236-42), because it is not immediately apparent how the New Mexico SORNA and the Supreme Court of New Mexico's decision on how to interpret the New Mexico SORNA impact the constitutional analysis; and (ii) that tackling the first element "may create a risk of bad

**A.** **CHACON INFRINGED KVECH'S CONSTITUTIONALLY PROTECTED LIBERTY INTEREST WHEN SHE DID NOT REMOVE HIM FROM THE NEW MEXICO SEX OFFENDER REGISTRY.**

The undisputed facts show that Kvech was convicted of a sex offense in Colorado and was required to register as a sex offender in Colorado.  Under Colorado law, he was required to register for ten years, and then he could petition to remove his name from the registry.  When he moved to New Mexico, he registered as a sex offender for about a year, and after he stopped registering, he was charged with failing to register as a sex offender.  He moved to dismiss the charges against him, arguing that his Colorado offense was not equivalent to one of New Mexico's enumerated sex offenses.  Judge McDonald dismissed the charges after reviewing the statutory elements of the Colorado conviction and comparing it to the statutory elements of the New Mexico offenses, concluding that the Colorado conviction was not an equivalent offense.  Although Judge McDonald said Kvech did not need to continue registering as a sex offender, Kvech registered once more, but then never again.  Kvech's attorney sent a letter to Chacon,

_____

decisionmaking" because of inadequate briefing and argument, <u>Kerns v. Bader</u>, 663 F.3d 1173, 1180-81 (10th Cir. 2011)(quoting <u>Pearson v. Callahan</u>, 555 U.S. at 236-42), because Chacon focused almost entirely on whether the law was clearly established.  Other circumstances, however, indicate that the Court may "avoid avoidance" and address the first prong, because the case involves a recurring fact pattern, and agencies like the the DPS and officials like Chacon would benefit from constitutional guidance to avoid future challenges on their conduct.  <u>Kerns v. Bader</u>, 663 F.3d at 1181.  Most important, the Court notes that its analysis whether the law is clearly established depends greatly on how the constitutional right is framed and understood, and by addressing the first prong of the qualified immunity analysis first, the Court has been better able to accurately describe the constitutionally protected liberty interest, the process that was due, and whether the relevant cases clearly established these rights.  Indeed, for the Court in this particular case, it is very difficult to intelligently discuss the clearly established prong without analyzing fully whether there was a constitutional violation.  Thus, while the Court should be careful not to reach issues that the Supreme Court or Tenth Circuit want the Court to avoid, it is difficult here to intelligently do the clearly established analysis without studying the violation prong fully and focusing on what the right is.  Because the Tenth Circuit has emphasized that the "clearly established" analysis may turn on a "distinction," it is important to flesh out any distinctions, and doing the first prong helps mightily disclose those distinctions.

requesting that she remove Kvech from the sex offender registry; she did not do so.  Chacon

reviewed Kvech's file and concluded that Kvech's conviction was a equivalent to a sex offense in

New Mexico, and sent a letter directing Kvech to renew his registration as a sex offender; he did

not do so.  After the DPS policy changed, Chacon then sent a second letter, stating that Kvech

did not need to register

       "'Where a person's good name, reputation, honor, or integrity is at stake because of what

the government is doing to him,' a protectible liberty interest may be implicated that requires

procedural due process in the form of a hearing to clear his name."  Gwinn v. Awmiller, 354

F.3d at 1216 (quoting Jensen v. Redevelopment Agency of Sandy City, 998 F.2d 1550, 1558

(10th Cir.1993)).  Asserting damage to one's reputation "is not enough to implicate due process

protection" -- a plaintiff must satisfy what is sometimes described as a "stigma plus" standard,

demonstrating that

> (1) the government made a statement about him or her that is sufficiently
> derogatory to injure his or her reputation, that is capable of being proved false,
> and that he or she asserts is false, and (2) the plaintiff experienced some
> governmentally imposed burden that "significantly altered [his or] her status as a
> matter of state law.

Gwinn v. Awmiller, 354 F.3d at 1216 (alteration in original)(quoting Paul v. Davis, 424 U.S. at

710-11)).

### 1.      Chacon's Conduct of Not Removing Kvech from the Sex Offender Registry Resulted in the Government Making a Stigmatizing Statement About Kvech, Namely, that He Is a Sex Offender Under New Mexico Law.

       The first requirement of a procedural due-process stigma-plus claim is that "the

government made a statement about him . . . that is sufficiently derogatory to injure his . . .

reputation, that is capable of being proved false . . . ."  Gwinn v. Awmiller, 354 F.3d at 1216

(quoting Paul v. Davis, 424 U.S. at 710-11)).  This first part of the liberty interest -- that the government made a false statement that is sufficiently derogatory to injure one's reputation -- can be broken into several parts: first, whether the government made a false statement about Kvech, and, second, whether it was sufficiently derogatory to injure Kvech's reputation.  The first question depends greatly on how broadly or narrowly the statement is interpreted.  On the one hand, the government stated that Kvech was a convicted sex offender, which is true: Kvech was a convicted sex offender in Colorado, and was required to register as a sex offender in Colorado. On the other hand, the government did not simply state that Kvech was a convicted sex offender, but that his sex offense was an equivalent of a New Mexico sex offense, which required registering in New Mexico.  This more narrowly-crafted statement is the statement that may be false, if Kvech's Colorado conviction is not equivalent to a New Mexico sex offense.  If that statement is false, one must ask whether it is deragotory and injurious to Kvech's reputation, when it is true that he is a registered sex offender in a different state

### a.    The Statement that Kvech is a Sex Offender in New Mexico is False.

While it is undisputed that Kvech was convicted for a sex offense in Colorado, the Court must determine if, under New Mexico law, his offense is an equivalent offense in New Mexico, requiring him to register as a sex offender in New Mexico.  The Supreme Court of New Mexico has rejected the "narrow, elements-based approach" that Judge McDonald used, and opts instead for "a broader approach that examines the offender's actual conduct."   State v. Hall, 2013-NMSC-001 ¶ 17.

> When a defendant enters a plea of guilty or nolo contendere, the charging document, plea agreement, or transcript of the plea hearing should establish the factual basis for the plea.  A New Mexico court should consider the facts stated in such documents when determining whether the conduct underlying the plea would

have constituted a violation of one of the twelve enumerated SORNA offenses
that require sex offender registration.  In essence, the question is whether the out-
of-state fact-finder necessarily must have found facts that would have proven the
elements of the New Mexico registrable offense.  If so, the alleged sex offender
has committed the equivalent of an enumerated New Mexico sex offense.

State v. Hall, 2013-NMSC-001 ¶ 22.  The Supreme Court of New Mexico noted that,

in some cases, such as a guilty plea in which there was no allocution, there will be
no factual findings for a New Mexico court to review.  In that instance, the court
will be limited to comparing the elements of the foreign sex offense to those of
the enumerated offenses under SORNA.  In some cases, this will mean that out-
of-state sex offenders will not have to register in New Mexico, even for serious
offenses.  If the Legislature is disturbed by this possibility, it is free to amend
SORNA once again.  Several states have passed laws requiring out-of-state sex
offenders to register for any offense that was registrable in the state of conviction.

State v. Hall, 2013-NMSC-001 ¶ 24.

When Chacon reviewed Kvech's file, she relied on the Colorado officer's Affidavit of
Probable Cause for Arrest Warrant -- not on a charging document, plea agreement, or transcript
of the plea hearing.  The Supreme Court of New Mexico did not state whether a court may
consider documents besides the "charging document, plea agreement, or transcript of the plea
hearing," but said "the question is whether the out-of-state fact-finder necessarily must have
found facts that would have proven the elements of the New Mexico registrable offense."  State
v. Hall, 2013-NMSC-001 ¶ 22.  In the Affidavit of Probable Cause for Arrest Warrant, the affiant
said she had probable cause to believe that Kvech committed Colo. Rev. Stat. "18-3-402, Sexual
assault," Affidavit of Probable Cause for Arrest Warrant at 21, but Kvech did not plead guilty to
sexual assault -- he was charged with and pled guilty to Unlawful Sexual Contact, under Colo.
Rev. Stat. § 18-3-404(1)(a).  The Colorado factfinder would not have necessarily found all of the
facts alleged in the Affidavit of Probable Cause for Arrest Warrant, because Kvech's guilty plea
was for Unlawful Sexual Contact.  While the Colorado plea agreement or transcript of the plea

- 74 -

hearing may reveal more facts, neither party in this case attached that evidence to their pleadings, and so the Court cannot consider these documents.  Further, Chacon stated that she relied on the Affidavit of Probable Cause for Arrest Warrant, not on the charging documents, plea agreement, or transcript of the plea hearing, indicating that those documents likely do not contain the same facts as those alleged in the Affidavit of Probable Cause for Arrest Warrant.

When a court cannot rely on the underlying documents, and therefore has no factual findings to review, it "will be limited to comparing the elements of the foreign sex offense to those of the enumerated offenses under SORNA." State v. Hall, 2013-NMSC-001 ¶ 24.  That is the analysis Judge McDonald completed, and he concluded that Kvech's Colorado conviction was not equivalent to an enumerated sex offense in New Mexico.  The statute under which Kvech was convicted states "(1) Any actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if: (a) The actor knows that the victim does not consent[.]"  Colo. Rev. Stat. § 18-3-404(1)(a).  The closest enumerated offense under the New Mexico SORNA is criminal sexual contact in the fourth degree, which states:

A. Criminal sexual contact is the unlawful and intentional touching of or application of force, without consent, to the unclothed intimate parts of another who has reached his eighteenth birthday, or intentionally causing another who has reached his eighteenth birthday to touch one's intimate parts.

. . . .

C. Criminal sexual contact in the fourth degree consists of all criminal sexual contact perpetrated:

(1) by the use of force or coercion that results in personal injury to the victim;

(2) by the use of force or coercion when the perpetrator is aided or abetted by one or more persons; or

(3) when the perpetrator is armed with a deadly weapon.

Whoever commits criminal sexual contact in the fourth degree is guilty of a fourth degree felony.

N.M. Stat. Ann. § 30-9-12(A), (C).  Unlike Colorado's Unlawful Sexual Contact statute, New Mexico's criminal sexual contact in the fourth degree requires the additional elements of force or coercion, or that the perpetrator be armed with a deadly weapon.  The Court agrees with Judge McDonald's conclusion -- the elements of the statute under which Kvech was convicted in Colorado is not an equivalent offense to one of New Mexico's enumerated sex offenses under SORNA, and without factual findings from the charging document, plea agreement, or transcript of the plea hearing, the Court cannot otherwise conclude that Kvech would have been convicted of a sex offense in New Mexico.  Because Kvech's conviction is not an equivalent to New Mexico's sex offenses under the New Mexico SORNA, Kvech has established that the statement that he is a sex offender under New Mexico law is false.

> **b.**      **The Statement that Kvech is a Sex Offender in New Mexico is Derogatory and Injures Kvech's Reputation.**

Generally, having one's name on a sex offender registry, especially in light of the public access to this information, has a severe stigmatizing effect: "[T]here can be no doubt that the widespread public access to this personal and constantly updated information has a severe stigmatizing effect."  Gwinn v. Awmiller, 354 F.3d at 1223 (quoting Smith v. Doe, 538 U.S. 84 (Stevens, J., concurring)).  The Tenth Circuit has indicated that making a false statement that someone is a sex offender, and requiring that person to register as a sex offender, is sufficiently derogatory to injure that person's reputation.   See Gwinn v. Awmiller, 354 F.3d at 1224.  Kvech's case is more difficult than the normal case, because he was already required to register as a sex offender in Colorado, and one could ask whether the additional requirement of having to

- 76 -

register in New Mexico could do any more damage to his reputation.  Like the previous analysis,

however, the Court concludes that it is important to focus on the relevant state's laws: whether

requiring Kvech to register as a sex offender <u>in New Mexico</u> further stigmatized him or injured

his reputation.

New Mexico's requirement that the out-of-state conviction must be an "equivalent" to a

listed sex offense before the person must register as a sex offender is not unique, but it is also not

the only approach states have taken.  Sixteen jurisdictions use an external approach: "external

approach states require registration if the foreign jurisdiction where the conviction occurred

required registration, regardless of whether it would warrant registration in the forum."  Wayne

A. Logan, <u>Horizontal Federalism in an Age of Criminal Justice Interconnectedness</u>, 154 U. Pa. L.

Rev. 257, 287 (2005).  The Supreme Court of New Mexico has recognized that New Mexico's

legislature could adopt this approach, if it wanted:

> Several states have passed laws requiring out-of-state sex offenders to register for
> any offense that was registrable in the state of conviction.  <u>See</u>, <u>e.g.</u>, Ind. Code
> Ann. § 11–8–8–5(b)(1) (West 2012) (The term "sex or violent offender" includes
> "a person who is required to register as a sex or violent offender in any
> jurisdiction."); Mont. Code Ann. § 46–23–502(9)(b) (2007) (A "sexual offense"
> includes "any violation of a law of another state, a tribal government, or the
> federal government that is reasonably equivalent to a violation listed in subsection
> (9)(a) <u>or</u> for which the offender was required to register as a sexual offender after
> an adjudication or conviction." (emphasis added)).  This type of provision is an
> option for New Mexico as well.  If the Legislature is concerned about adopting
> other states' registry requirements wholesale, it could also allow an affirmative
> defense for sex offenders whose actual conduct in the foreign state would not
> have constituted a registrable offense in New Mexico.

<u>State v. Hall</u>, 2013-NMSC-001 ¶ 24.  If New Mexico adopted this approach, then requiring

someone to register in New Mexico would not be any more damaging to the person's reputation

than requiring the person to register in the original state, because being classified in one state as a

sex offender would mean the same thing in the other.  With New Mexico's current system,

however, when a person registers as a sex offender in New Mexico, it is because they have been convicted of either one of the enumerated sex offenses or an equivalent sex offense, and requiring Kvech to register when his offense was not equivalent falsely communicated that he had committed a more serious offense than what was true.  It may be that most people viewing a publicly available sex offender registry would not understand or appreciate the subtle differences between the registration requirements in one state to the next, but that does not change that requiring Kvech to register in New Mexico communicated that he was convicted for a more serious crime, attaching to it more stigma and more injury to his reputation.

2.   **By not Removing Kvech from the Sex Offender Registry, Chacon's Actions Imposed a Burden that Significantly Altered Kvech's Legal Status in New Mexico.**

The stigma-plus standard requires that there is an alteration in the person's legal status, and the Tenth Circuit has held that requiring a person to register as a sex offender significantly alters one's status.  See Gwinn v. Awmiller, 354 F.3d at 1224.  While Kvech was already required to register as a sex offender in Colorado, the registration requirements imposed on him in New Mexico were more onerous: in Colorado, Kvech would have only had to update his registration information once a year, and after ten years, he could petition the government to remove his name from the sex offender registry; in New Mexico, he had to update his registration information every ninety days for life.  Further, the comparison is not just Kvech's status in Colorado compared to his status in New Mexico if he had to register as a sex offender, but also what Kvech's status would have been in New Mexico had he been correctly classified.  Under New Mexico law, he should not have been classified as a sex offender, and that erroneous classification subjected him to continued registration requirements, where he would have had to provide detailed information about himself to the local sheriff, and failing to register subjected

him to the risk of being charged and convicted with a fourth degree felony for failing to register. See N.M. Stat. Ann. § 29-11A-9.  Although Kvech did not register again after February 12, 2009, he was still subject to the registration requirements or the risk of a criminal charge for failing to register.  The Court concludes that Chacon's decision to not remove Kvech's name from the sex offender registry resulted in a wrongful classification that significantly altered his legal status in New Mexico.[29]

### 3.    Chacon Did Not Provide Kvech with Proper Procedural Protections.

In Connecticut Dept. of Public Safety v. Doe, the Supreme Court held that, under Connecticut's sex offender registry scheme, a person who had been convicted of a sex offense already received all the process due, and that he was not entitled to an additional hearing before he must register as a sex offender.  See 538 U.S. at 7.  "[T]he fact that respondent seeks to prove -- that he is not currently dangerous -- is of no consequence under Connecticut's Megan's Law. As the the DPS Website explains, the law's requirements turn on an offender's conviction alone - - a fact that a convicted offender has already had a procedurally safeguarded opportunity to contest."  Conn. Dept. of Public Safety v. Doe, 538 U.S. at 7.  Connecticut implemented a sex offender registry that was based entirely on the fact of conviction; some other states' approaches are more nuanced and ask whether the convicted sex offender is currently dangerous.  Because of Connecticut's registry scheme, the additional hearing that the plaintiff requested would not have been material to his inclusion in the registry: "Plaintiffs who assert a right to a hearing under the

---

[29] At the hearing, Kvech argued that, even though he did not renew his registration after February 12, 2009, he had to disclose his status as a sex offender to his employer for the additional year and a half, until Chacon removed his name from the registry.  Although Kvech did not produce evidence on this point, the Court notes that the New Mexico SORNA places these requirements on registered sex offenders and that this condition also changed Kvech's legal status, satisfying the "plus" for the stigma-plus standard.

Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme.  Respondent cannot make that showing here."  538 U.S. at 8.

New Mexico is one of nineteen states that employ a compulsory approach, "which requires that offenders satisfying statutory, offense-related criteria be subject to registration and notification, affording offenders no right to a prior hearing on the eligibility determination." Wayne A. Logan, Liberty Interests in the Preventive State: Procedural Due Process and Sex Offender Community Notification Laws, 89 J. Crim. L. & Criminology 1167, 1175 (1999).  Had Kvech been convicted of a sex offense listed in the New Mexico SORNA, Connecticut Department of Public Safety v. Doe would foreclose any argument that he deserves an additional hearing, because he would have received his due process at the time he was convicted.  Kvech was not, however, convicted under one of the listed sex offenses in New Mexico; he was convicted for a sex offense in Colorado, and he argues that, when he came to New Mexico, he was not given any opportunity to contest the determination that his Colorado offense was equivalent to a New Mexico sex offense.  Unlike the situation in Connecticut Department of Public Safety v. Doe, where the plaintiff wanted a hearing on his current dangerousness, an issue that would not have made a difference under Connecticut's sex offender registry statute, the question Kvech seeks to resolve makes a difference under the New Mexico SORNA.

Although Gwinn v. Awmiller and Brown v. Montoya do not involve precisely the same facts, because the plaintiffs in those cases were not convicted of any sex offenses in any jurisdiction, the process that those plaintiffs argued they deserved is similar to the process Kvech argues he deserves.  In those cases, the plaintiffs wanted an opportunity to challenge the determination that their convictions required them to register as sex offenders; Kvech likewise

argues he deserved the opportunity to challenge the determination that his Colorado conviction required him to register in New Mexico.

The Court must determine the appropriate level of process "through an analysis of 'the risk of an erroneous deprivation' of the private interest if the process were reduced and 'the probable value, if any, of additional or substitute procedural safeguards.'"  Brown v. Montoya, 662 F.3d at 1168 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529(2004); Mathews v. Eldridge, 424 U.S. at 335, (O'Connor, J., plurality opinion)).

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

Mathews v. Eldridge, 424 U.S. at 335.  The Tenth Circuit has recognized that Gwinn v. Awmiller "sets a floor for the minimum level of process due to a person directed to register as a sex offender outside of prison."  Brown v. Montoya, 662 F.3d at 1168.  This baseline means that someone outside of prison is entitled to at least "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action."  Gwinn v. Awmiller, 354 F.3d at 1219.

Chacon argues that people with out-of-state convictions who are told to register as sex offenders in New Mexico may file declaratory judgments to challenge their classification in New Mexico as sex offenders.  This procedure does not alone, however, satisfy due process.  While it is true that there are situations when providing a post-determination hearing satisfies due process, see Gilbert v. Homar, 520 U.S. 924, 930 (1997)("Where a State must act quickly, or where it

- 81 -

would be impractical to provide pre-deprivation process, post-deprivation process satisfies the requirements of the Due Process Clause."), such a post-determination hearing in this case does not satisfy due process. Chacon's suggestion ignores the procedural and factual history in <u>Brown v. Montoya</u>, where the plaintiff filed a declaratory judgment in state court to remove his name from the sex offender registry and won, and then filed the 42 U.S.C. § 1983 action in federal court; the Tenth Circuit did not view the declaratory action as sufficient process, and instead focused on what process was given to the plaintiff before he was classified as a sex offender. <u>See</u> 662 F.3d at 1170. The plaintiff alleged that the parole officer did not provide any process before placing the plaintiff on the sex offender registry, and the Tenth Circuit said, in the context of a motion to dismiss, that the plaintiff "sufficiently alleged that he did not receive constitutionally adequate process." 662 F.3d at 1170. Here, the undisputed facts show that Chacon did not give Kvech any process when she determined that he was still subject to the New Mexico SORNA registration requirements. Although she was not responsible for failing to provide a pre-deprivation hearing when Kvech initially moved to New Mexico, she did not provide him with an opportunity of any sort to contest her conclusion that, despite Judge McDonald's opinion, Kvech's Colorado conviction required him to register in New Mexico. Although Kvech's situation is different from the plaintiffs in <u>Gwinn v. Awmiller</u> and <u>Brown v. Montoya</u> in that he was convicted of a sex offense in Colorado, the Court concludes that he was entitled to at least the same procedural protection -- "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action," <u>Brown v. Montoya</u>, 662 F.3d at 1170; <u>Gwinn v. Awmiller</u>, 354 F.3d at 1219 -- because Chacon's decision similarly required Kvech to register as a sex offender in New Mexico when he was not otherwise required to do so.

      **4.**      **There Is A Factual Dispute Whether Chacon Acted with the Requisite State of Mind, But Taking All Facts in Favor of the Non-Moving Party, a Reasonable Jury Could Find that Chacon Acted Recklessly in Requiring Kvech to Continue to Register as a Sex Offender.**

As part of the analysis whether a defendant has violated the plaintiff's procedural due process rights, the Tenth Circuit has stated that, to overcome qualified immunity, a plaintiff must show that the defendant acted with the requisite state of mind: "[A] plaintiff must show that the defendant was more than simply negligent to make out a procedural due process claim." Brown v. Montoya, 662 F.3d at 1170 (citing Daniels v. Williams, 474 U.S. 327, 333-36 (1986)). The Tenth Circuit noted that circuit courts have required recklessness or gross negligence, but that the Tenth Circuit has not resolved the issue, and further, that it did not need to resolve the issue in Brown v. Montoya, because the plaintiff alleged that the defendant's conduct was "intentional, malicious, sadistic, willful, wanton, obdurate, and in gross and reckless disregard of [the plaintiff's] constitutional rights." 662 F.3d at 1170. The Tenth Circuit was analyzing a motion to dismiss, and so did not need to resolve the requisite mental state. See 662 F.3d at 1170-71. Following other circuits, however, would require finding that Chacon acted with at least recklessness or gross negligence.

Kvech argues that Chacon acted "at least recklessly if not intentionally or maliciously" when she did not remove Kvech from the sex offender registry and directed him to renew his registration, because she had "knowledge of Judge McDonald's ruling that [Kvech] was not required to register as a sex offender in New Mexico." Response at 17. Whether Chacon acted recklessly, intentionally, or maliciously is a factual question, and the parties have produced evidence that would allow a factfinder to come to either conclusion; because this issue comes before the Court in a motion for summary judgment, the Court must construe all disputed facts in

favor of the non-moving party, and, thus, a reasonable jury could find that Chacon acted with the requisite mental state.

**B.     THE LAW WAS NOT CLEARLY ESTABLISHED THAT A PERSON WHO WAS REQUIRED TO REGISTER AS A SEX OFFENDER IN STATE A WOULD BE ENTITLED TO THE SAME PROTECTION AS A PERSON WHO DID NOT HAVE A PREVIOUS SEX OFFENSE CONVICTION IN ANY STATE.**

The Court must next determine whether the law was clearly established at the time of Chacon's actions, between 2006 and 2010. "Whether a right is 'clearly established' is an objective test: 'The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" Brown v. Montoya, 662 F.3d at 1164 (quoting Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010)). The clearly established prong of the qualified immunity test is a very high burden for the plaintiff: "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 131 at 2083. "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" Reichle v. Howards, 132 S. Ct. at 2093 (quoting Ashcroft v. al-Kidd, 131 S. Ct. at 2083). Although Kvech and Chacon both cite to Connecticut Department of Public Safety v. Doe, Gwinn v. Awmiller, and Brown v. Montoya in their briefing, Chacon argues that, because Brown v. Montoya was decided in 2011, it is not relevant to the question whether the law was clearly established.

The Tenth Circuit held in Kerns v. Bader that, although "a case on point isn't required if the impropriety of the defendant's conduct is clear from existing case law," the law is not clearly established where "a distinction _might_ make a constitutional difference." Kerns v. Bader, 663

F.3d at 1188 (emphasis in original).  At the time, Chacon could consult <u>Connecticut Department of Public Safety v. Doe</u> and <u>Gwinn v. Awmiller</u>; the former involves a person who had been convicted of a sex offense, and the Supreme Court said he had already received all the process due him when he was convicted, and the latter involves a person who had never been convicted for a sex offense, and the Tenth Circuit said he deserved some minimal due process protections before he could be required to register as a sex offender.  Although the Court concludes that Chacon should have provided some procedural protections to Kvech, at the time Chacon was making her decisions, it was not clearly established that a person who had been convicted of a sex offense in state A and subject to state A's sex offender registry requirements would need any additional process before registering in state B.  The distinction between Kvech's case and <u>Gwinn v. Awmiller</u> might have made a constitutional difference, because Kvech received an opportunity during his Colorado conviction to contest his classification as a sex offender in Colorado.

Kvech argues that the law was clearly established that a government official could not look outside the court records to determine whether a person was subject to sex offender registry requirements, but the cases he cites do not clearly establish that point.  In <u>Gwinn v. Awmiller</u>, the Tenth Circuit upheld a hearing panel's decision to classify a prisoner as a sex offender based on a statement in the presentence report, and for purposes of classification inside the prison, this foundation was enough evidence to support the hearing panel's conclusion.  <u>See</u> 354 F.3d at 1219.  While the Tenth Circuit said different evidentiary standards would apply outside of prison, the Tenth Circuit remanded the case for the district court to determine whether the plaintiff was required to register as a sex offender after he was released from prison and did not state what the district court could review in making that determination.  <u>See</u> 354 F.3d at 1224.

Nor does <u>Brown v. Montoya</u> state that an officer may not consult documents outside the court record.  In <u>Brown v. Montoya</u>, the officer who classified the plaintiff as a sex offender moved to dismiss the case on the basis of qualified immunity.  The officer directed the plaintiff to register as a sex offender, because the plaintiff was convicted for false imprisonment, and the officer believed that the victim was a minor: under the New Mexico SORNA, false imprisonment is not a sex offense unless the victim is a minor.  The plaintiff argued that the officer had no basis for concluding that the victim was a minor, because the plaintiff had pled guilty to the portion of the false imprisonment statute that did not include as an element that the victim is a minor; the indictment did not allege that the victim was a minor; the state court did not state that the victim was a minor during sentencing; and neither the state court nor the prosecutor said that they were aware that the victim was a minor.  <u>See</u> 662 F.3d at 1169.  The Tenth Circuit denied the officer's motion to dismiss: "Accepting as true Mr. Brown's allegation that Officer Montoya had no factual basis to believe that his victim was a minor, it should have been apparent to a reasonable officer that classifying Mr. Brown as a sex offender violated his clearly established procedural due process right."  662 F.3d at 1171.

Unlike <u>Brown v. Montoya</u>, Chacon had a factual basis for believing that Kvech's conduct in the Colorado offense constituted a sex offense in New Mexico: the Affidavit of Probable Cause for Arrest Warrant provided evidence of Kvech's conduct, including that he used force against the victim.  Chacon did not make an independent determination without any evidentiary support.  Further, New Mexico law was unsettled at the time as to how to make a determination that an out-of-state conviction is a equivalent to a New Mexico sex offense.  Although Judge McDonald determined that Kvech's offense was not equivalent to a New Mexico sex offense by way of comparing the elements of the offenses, the Supreme Court of New Mexico subsequently

confirmed that courts should look to the underlying facts of the conviction, when that record is available.  That is the analysis Chacon performed, although she relied on a document that the Supreme Court of New Mexico did not explicitly authorize as part of that factual review.  It was not clearly established that relying on the Affidavit of Probable Cause for Arrest Warrant would not be proper, and the Supreme Court of the United States and the Tenth Circuit have not clearly stated what documents may be considered in making this determination.

It was also not clearly established what process would be due a person who had been convicted of a sex offense in another state.  At the time Chacon made her determination, it was clear that a person who had not been convicted of any sex offense deserves certain protections -- "notice of the charges, an opportunity to present witnesses and evidence in defense of those charges, and a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action," Brown v. Montoya, 662 F.3d at 1170; Gwinn v. Awmiller, 354 F.3d at 1219 --but it was not clear that a person who had been convicted of a sex offense in another state also deserves these protections.  Further, not every state's statutory scheme will require such a hearing; if New Mexico were to amend its statute to make every person convicted of a sex offense in another state subject to the New Mexico SORNA registration requirements, then a person convicted of an out-of-state sex offense would have received all the process due when he or she was convicted.

The Court concludes that the law was not clearly established at the time that Chacon made her determination, because it was not clear what process was due, if any, to someone who had been convicted of a sex offense in a different state and was required to register as a sex offender in that state.

**II.     STATUTORY IMMUNITY DOES NOT PROTECT CHACON, BECAUSE THERE**

**IS A DISPUTED FACT WHETHER CHACON ACTED IN GOOD FAITH WHEN SHE IGNORED JUDGE MCDONALD'S OPINION.**

Chacon asserts that she is protected by statutory immunity, under 42 U.S.C. § 16929, which states: "The Federal Government, jurisdictions, political subdivisions of jurisdictions, and their agencies, officers, employees, and agents shall be immune from liability for good faith conduct under this subchapter." 42 U.S.C. § 16929. While Chacon asserts that she was acting in good faith, based on her understanding of the facts and applicable law, Kvech argues that Kvech ignored "Judge McDonald's order that clearly states that Plaintiff was not required to register as a sex offender in New Mexico." Response at 16-17. The Court concludes that there is a disputed factual question whether Chacon was acting in good faith when she came to a different conclusion than Judge McDonald, and thus, will deny the MSJ regarding statutory immunity.

The Court concludes that Chacon violated Kvech's constitutionally protected liberty interest, but that the law was not clearly established at the time, thus entitling Chacon to qualified immunity. The disputed fact -- Chacon's mental state -- does not affect the Court's decision to grant summary judgment for qualified immunity, because the Court's decision rests on the clearly established prong of qualified immunity, and there are no disputed facts that affect that analysis. Disputed facts regarding whether Chacon acted in good faith preclude the Court from granting summary judgment on her statutory immunity defense. Because the Court will grant Chacon's MSJ for qualified immunity, it disposes of all Kvech's remaining claims against Chacon.[30]

---

[30] This Memorandum Opinion disposes of all remaining claims and parties. The Court previously dismissed all the claims against DPS, and dismissed the state-law claims against Chacon. See Stipulated Order Dismissing with Prejudice Parts of Complaint, filed May 8, 2012 (Doc. 12). Although the Court has not addressed the remaining claims against "John Does 1-10," the Court may disregard fictional defendants when determining dispositive motions. See Armijo

**IT IS ORDERED** that the Defendant Regina Chacon's Motion for Summary Judgment

(Qualified Immunity), filed September 28, 2012 (Doc. 22), is granted in part and denied in part.


_____
UNITED STATES DISTRICT JUDGE


*Counsel*:

Paul M. Dominguez
Dominguez Law Firm
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Michael Dickman
Santa Fe, New Mexico

     *Attorney for the Defendants*

---

v. New Mexico, No. CIV 08-0336 JB/ACT, 2009 WL 3672828, at *5 (D.N.M. Sept. 30, 2009)(Browning, J.)(stating that "the court routinely ignore[s] John Does in determining motions to dismiss").